C. F. M. STARK, APPELLANT, V. MAGNUS OLSEN ET AL., APPELLEES.

FILED APRIL 5, 1895. No. 5945.

1. **Conflict of Laws:** EXECUTION OF NOTE AND MORTGAGE. On the 13th day of March, 1886, in Cedar county, this state, O. and wife executed and delivered a mortgage conveying lands in

said county to D., a resident of Iowa, to secure a loan made by the latter, a loan broker, in the usual course of business. *Held*, In the absence of evidence explanatory of the transaction, the presumption is that the payment of the proceeds of the loan and the delivery of the note and mortgage were contemporaneous acts, and that the note is not an Iowa contract, although it appears from its face to have been executed in that state twelve days previous to the execution of the mortgage.

2. ———. In the absence of evidence to the contrary, laws of other states will be presumed to be the same as ours.

3. ———. Such presumption applies not alone to the written but as well to the unwritten laws of other states.

4. **Negotiable Instruments**: Provision for Attorneys' Fees. A note, otherwise in form negotiable, will not be held non-negotiable by reason of a provision therein for an attorney's fee in case suit is brought thereon to enforce collection.

5. ———: Provision to Declare Debt Due. Nor will a note be held non-negotiable on account of the following condition: "If default be made in the payment of any interest coupon, said principal sum may, at the option of the holder of this note, become due and payable without further notice." (*Heard v. Dubuque County Bank*, 8 Neb., 10.)

6. **Mortgages**: Notes: Evidence of Indorsee's Title to Security. In an action of foreclosure it appeared that O., the defendant, borrowed money of D. and executed a note therefor to D.'s wife, secured by an instrument denominated a mortgage or trust deed, in which D. was named as trustee with power to reconvey on payment of the note at maturity. On the day of its execution D. indorsed said note in the name of his wife and forwarded it to his correspondent in Boston, by whom it was on the day of its receipt sold and indorsed for value, accompanied by the mortgage, to C. J. S., through whom, by will duly proved, the plaintiff claims title. It was the custom of D. to take s·curities, payable to his wife's order, and dispose of them through eastern brokers by indorsement in her name with her knowledge and consent. *Held*, Sufficient evidence of title as against the mortgagor.

7. ———: Registration of Assignments: ·Notes: Bona Fide Holders. Section 39, chapter 73, Compiled Statutes, providing that "the recording of an assignment of a mortgage shall not in itself be deemed notice of such assignment to the mortgagor, * * so as to invalidate any payment made by them, or either of them, to the mortgagee," has no application to the

holder of negotiable securities whose title was acquired before maturity for value in the usual course of business. (*Eggert v. Beyer*, 43 Neb., 711.)

8. **Power of Trustee Under Deed:** Notice. Where a trustee is invested with the apparent title to property, persons dealing with him are not chargeable with undisclosed limitations upon his power with respect to the subject of the trust; but where his powers are clearly defined by deed or other instrument creating the trust, duly filed or recorded in conformity with the registration laws, persons dealing with him in respect to the trust property must at their peril take notice of the extent of such power.

9. **Principal and Agent:** Discharge of Mortgage Before Maturity: Authority. Agency with power to acknowledge satisfaction of a mortgage before maturity will not be presumed, as against a *bona fide* holder, from the mere fact that the mortgagee, who had disposed of the security in the usual course of business, forwards to his correspondent at whose office it is payable funds for the satisfaction of interest coupons.

Appeal from the district court of Cedar county. Heard below before Norris, J.

The facts are stated in the opinion.

*Barnes & Tyler*, for appellant:

The stipulation for payment of an attorney's fee does not render the note non-negotiable. (*Sea v. Glover*, 1 Ill. App., 335; *Carlon v. Kenealy*, 12 M. & W. [Eng.], 139; *German Mutual Fire Ins. Co. v. Franck*, 22 Ind., 364; *Chicago Railway Equipment Co. v. Merchants Nat. Bank*, 136 U. S., 268.)

A provision in a note allowing the payee to declare the debt due does not impair the negotiability of the instrument. (*Heard v. Dubuque County Bank*, 8 Neb., 10; *Chicago Railway Equipment Co. v. Merchants Nat. Bank*, 136 U. S., 268; *Sperry v. Horr*, 32 Ia., 184.)

The negotiability of the note is to be determined by the law of the place where it was made. (1 Randolph, Com-

mercial Paper, sec. 47; 1 Daniel, Negotiable Instruments, sec. 874; *Warder v. Arell*, 2 Wash. [Va.], 282.)

Registration of assignment could not affect the rights of a *bona fide* holder of the note. (*South Branch Lumber Co. v. Littlejohn*, 31 Neb., 606; *Williams v. Keyes*, 51 N. W. Rep. [Mich.], 522.)

An instrument given to secure the payment of money is a mortgage. (*Hurley v. Estes*, 6 Neb., 386; *Webb v. Hoselton*, 4 Neb., 318; *Cotterell v. Long*, 20 O., 464; *Sargent v. Howe*, 21 Ill., 149.)

The deed of trust is a mere incident to the debt, and passed with the assignment of the note. (*Studebaker Mfg. Co. v. McCargur*, 20 Neb., 500; *Kuhns v. Bankes*, 15 Neb., 92; *Webb v. Hoselton*, 4 Neb., 308; *Kyger v. Ryley*, 2 Neb., 28; *Carpenter v. Longan*, 16 Wall. [U. S.], 271.)

Payment to the original trustee after the note and trust deed had been transferred by him to an innocent purchaser for value before maturity did not affect the rights of the latter to enforce payment. (*Best v. Crall*, 23 Kan., 482; *Davis v. Miller*, 14 Gratt. [Va.], 13; *Dutton v. Ives*, 5 Mich., 515; *Blumenthal v. Jassoy*, 29 Minn., 177; *Grant v. Kidwell*, 30 Mo., 455; *Swall v. Clarke*, 51 Cal., 227; *Webster v. Lee*, 5 Mass., 334; *Burhaus v. Hutcheson*, 25 Kan., 625; *Block v. Kirtland*, 21 Ark., 393.)

On the question of agency the court is referred to the following cases: *Thomas v. Bowman*, 29 Ill., 426, 30 Ill., 84; *Minell v. Reed*, 26 Ala., 730; *Furnas v. Frankman*, 6 Neb., 429; *Loomis v. Simpson*, 13 Ia., 532; *Wright v. Boynton*, 37 N. H., 9.

A trustee has only the powers conferred by the trust. When limitations appear of record, persons dealing with him must take notice of his want of authority. He had no power to receive payment and release the debt before it was due, without the consent of the beneficiary. (*Swartout v. Curtis*, 5 N. Y., 301; *Newman v. Samuels*, 17 Ia., 536; *Livermore v. Maxwell*, 55 N. W. Rep. [Ia.], 37.)

*Benjamin M. Weed* and *Carter & Brown, contra:*

The note sued upon is non-negotiable. (1 Daniel Negotiable Instruments, sec. 30; *Bank of Carroll v. Taylor,* 25 N. W. Rep. [Ia.], 810; *Hegeler v. Comstock,* 45 N. W. Rep. [S. Dak.], 333; *Dow v. Updike,* 11 Neb., 95; *First Nat. Bank of Stillwater v. Larsen,* 19 N. W. Rep. [Wis.], 67; *McComas v. Haas,* 8 N. E. Rep. [Ind.], 579; *Hugh-itt v. Johnson,* 28 Fed. Rep., 865; *Smith v. Marland,* 59 Ia., 645; *Hardin v. Olson,* 14 Fed. Rep., 705; *Lamb v. Story,* 45 Mich., 488; *Hall v. Toby,* 1 Atl. Rep. [Pa.], 369; *Maryland Fertilizing & Mfg. Co. v. Newman,* 29 Alb. L. J. [Md.], 213; *Garretson v. Purdy,* 14 N. W. Rep. [Dak.], 100; *Jones v. Radatz,* 27 Minn., 240; *First Nat. Bank of Trenton v. Gay,* 63 Mo., 38; *Andrews v. Pond,* 13 Pet. [U. S.], 65; *Thompson v. Ketcham,* 4 Johns. [N. Y.], 285; *Stix v. Mathews,* 63 Mo., 371; *Mahoney v. Fitzpatrick,* 133 Mass., 151; *Way v. Smith,* 111 Mass., 523; *Whitwell v. Winslow,* 134 Mass., 343; *Palmer v. Ward,* 6 Gray [Mass.], 340; *Russell v. Swan,* 16 Mass., 314; *Blakeley v. Grant,* 6 Mass., 386; *Quigley v. Mexico Southern Bank,* 80 Mo., 295; *Van Eman v. Stanchfield,* 10 Minn., 197; *Farris v. Wells,* 68 Ga., 604; *Hadden v. Rodkey,* 17 Kan., 429; *Canal Bank v. Bank of Albany,* 1 Hill [N. Y.], 287.)

As to the questions of assignment, the effect of payment by appellees, and the release of the trust deed the following authorities are cited: *Ellis v. Sisson,* 96 Ill., 105; *Willis v. Twambly,* 13 Mass., 204; *Bush v. Lathrop,* 22 N. Y., 535; *Crocker v. Whitney,* 10 Mass., 316; *Jones v. Witter,* 13 Mass., 304; *Miller v. Kreiter,* 76 Pa. St., 78; *Heermans v. Ellsworth,* 64 N. Y., 159; *Noble v. Thompson Oil Co.,* 79 Pa. St., 354; *Hull v. Conover,* 35 Ind., 372; *Prescott v. Hull,* 17 Johns. [N. Y.], 284; *Osgood v. Artt,* 17 Fed. Rep., 575; *Shufeldt v. Gillilan,* 124 Ill., 460; *Bank of Stockton v. Jones,* 65 Cal., 437; *Merrell v. Springer,* 24 N. E. Rep. [Ind.], 259; *Reed v. Marble,* 10 Paige [N. Y.],

409; *Union College v. Wheeler*, 61 N. Y., 88; *Johnson v. Carpenter*, 7 Minn., 120; *McCabe v. Farnsworth*, 27 Mich., 52; *Jones v. Smith*, 22 Mich., 360; *Rogers v. De Forest*, 7 Paige [N. Y.], 272; *Perkins v. Dibble*, 10 O., 440; *Waters v. Waters*, 20 Ia., 363; *Terry v. Allis*, 16 Wis., 504.

As to the power of the trustee to receive payment the following authorities are cited: *Connecticut General Life Ins. Co. v. Eldredge*, 102 U. S., 545; *Williams v. Jackson*, 107 U. S., 478; *Hadley v. Chapin*, 11 Paige [N. Y.], 253; *Van Rensselaer v. Aikin*, 22 Wend. [N. Y.], 249; *McNair v. Picotte*, 33 Mo., 57; *Verges v. Giboney*, 47 Mo., 171; *Renfro v. Adams*, 62 Ala., 302; *Daniels v. Densmore*, 32 Neb., 40; *Bryant v. Richardson*, 25 N. E. Rep. [Ind.], 808.

As to the question of agency the following cases are cited: *Sherwood v. Saxton*, 63 Mo., 78; *Chesley v. Chesley*, 49 Mo., 540; *Cassady v. Wallace*, 15 S. W. Rep. [Mo.], 138; *Livey v. Winton*, 30 W. Va., 554.

POST, J.

This is a proceeding for the foreclosure of a mortgage or trust deed executed by the appellees Olsen and wife, covering certain lands in Cedar county. In addition to the mortgagor and wife the Lombard Investment Company and Andrew Burggen were named as defendants, but as their rights are not involved in this appeal they will not be noticed further in this opinion. The mortgage, which was acknowledged before a notary public of Cedar county on the 13th day of March, 1886, was given to secure payment of the note of Olsen purporting to have been executed at Le Mars, Iowa, March 1, 1886, for $1,500, payable to the order of P. M. Dunn at Boston, Massachusetts, March 1, 1891, with interest from date at seven per cent, payable semi-annually, as evidenced by coupons attached thereto. Said mortgage or trust deed was executed to J. M. Dunn, as trustee for P. M. Dunn, the payee of the note

above described, and provides that the said trustee shall
have power to reconvey said premises whenever said princi-
pal note and interest coupons are fully paid to the said P. M.
Dunn or her assigns.   In this connection it should be men-
tioned that J. M. Dunn, who is named as trustee in said
mortgage, was, at the time of the execution thereof, engaged
in making loans at Le Mars and negotiating the notes and
mortgages taken in the course of his business through
brokers in New York, Boston, and elsewhere.   It was cus-
tomary for him to name P. M. Dunn, his wife, as payee of
notes so taken, and to indorse them, when disposed of, in
her name.   She had no knowledge of the note and mort-
gage in this case, but the practice of her husband in thus
dealing in her name is shown to have been with her
knowledge and consent, if not, indeed, with her express
approval.   It should be mentioned also that she has so far
ratified his action with respect to the transaction here in-
volved as to disclaim any interest in the note or mortgage.
On the 16th day of March, 1886, J. M. Dunn forwarded
said note and mortgage to the firm of John Jeffries & Sons,
brokers, doing business in Boston, with directions to sell
the same and remit the proceeds thereof through his corre-
spondent in New York.   The note at that time bore the
following indorsement executed by J. M. Dunn:

"Without recourse I hereby sell, transfer, and set over to
John Jeffries & Sons the within note and annexed coupons,
together with all my rights and interest under the trust
deeds securing the same.           ·     P. M. Dunn."

On the 11th day of March, 1886, the plaintiff, C. F.
M. Stark, then acting as agent for his mother, Mrs. C. J.
Stark, applied to Jeffries & Sons for investments, and was
furnished with a list of securities held by them for sale,
including this mortgage of which they had been previously
advised by Dunn.   Said mortgage was selected by Mr.
Stark among others, and the agreed price therefor, $1,-
502.91, left with the brokers named as a special deposit

until the receipt of the note and mortgage, which was on the 20th day of the same month, and on which day they were delivered to the purchaser, said note bearing the indorsement of Jeffries & Sons identical in form with that above set out, although no written assignment of the mortgage by the said P. M. Dunn, or in her name, was made at that time. Previous to the commencement of this action Mrs. Stark died, and by her will, which was duly proved, the plaintiff, her only heir and sole devisee, was named as sole executor. The latter deeming an assignment of the note essential in order to perfect his title, as executor, indorsed the same without recourse to Geo. K. Barstow, a clerk in the office of Jeffries & Sons, by whom it was immediately in the same manner indorsed and transferred to him, accompanied by the mortgage. The foregoing history of the transactions upon which the plaintiff's title depends is essential to an understanding of the issues presented, as will hereafter appear.

It is deemed necessary to here notice some of the allegations of the answer of Olsen and wife, viz.:

1. That on or about December 8, 1888, they paid to P. M. Dunn and J. M. Dunn, trustee, the full amount of said note, with interest, and that the said P. M. Dunn and J. M. Dunn, trustee, executed and delivered to them a release in writing, whereby they acknowledged satisfaction in full of the said mortgage.

2. That no assignment of said mortgage had ever been filed for record in Cedar county, and that they had no knowledge or information that it had been assigned to, or was owned by, any person other than the mortgagee.

3. An express denial of the assignment by P. M. Dunn and an allegation that the pretended assignment in her name by J. M. Dunn was unauthorized and void.

4. That the said J. M. Dunn was, at the date of the alleged payment by the defendants, the general agent of the plaintiff and John Jeffries & Sons, with power to re-

ceive payment and execute a release of said mortgage in the name of the holder thereof.

In support of the allegation first above mentioned they introduced in evidence a written instrument bearing date of December 8, 1888, purporting to have been executed by P. M. Dunn and J. M. Dunn as trustee, whereby, in consideration of $1 and other good and valuable considerations, they "remise, convey, and quitclaim" to Magnus Olsen all their title, claim, or demand through a trust deed for the premises described in the pleadings, executed March 1, 1886. Said instrument was acknowledged before a notary public for Plymouth county, Iowa, and filed for record in Cedar county, December 17 following. We may for our present purpose construe it as referring to the mortgage which is the subject of this controversy, although not definitely described therein. Another fact to which our attention is directed by the briefs of counsel, but which sheds no direct light upon the transactions involved, is that Mrs. Dunn, on the 26th day of February, 1891, executed what purports to be a formal assignment of the mortgage or trust deed to Mrs. Stark, but in which the land mentioned therein is erroneously described as situated in Dixon county. There is, however, one fact worthy of note in this connection as tending to illustrate the business relations between Mrs. Dunn and her husband, viz., that the instrument last mentioned, including the name of the assignor in the body thereof, is upon a printed form, which is strongly corroborative of the statement that it was the custom of her husband to take securities in her name.

The first proposition to which we will give attention is that the note in this case is by its terms non-negotiable, because it is uncertain both as to amount and time of payment. The condition to which we are referred to support that contention is the following: "And if default be made in the payment of any interest coupon or part thereof, then said principal sum may, at the option of the legal holder

of this note, become due and payable without further notice; and if suit be commenced to collect this note or foreclose the trust deed securing the same, I agree to pay a reasonable attorney's fee as provided by law. This note bears ten per cent interest per annum from maturity until fully paid." The note, as has been remarked, purports to have been executed at Le Mars, in the state of Iowa, while the mortgage was executed in this state, the consideration for both being the loan mentioned. It is also disclosed by the record that said loan was made on the written application of Olsen, the mortgagor, in accordance with the custom of loan brokers. The inquiry is, therefore, naturally suggested whether the note is an Iowa contract and to be governed by the laws of that state, or whether the laws of this state will be applied in order to determine its negotiability. We shall not, however, undertake a careful examination of the authorities bearing upon the subject, since a solution of the question may be readily attained from a closer inspection of the facts established by the record. We have not the benefit of the testimony of either of the Olsens, or of J. M. Dunn, but the mortgage, as we have seen, was executed and delivered twelve days subsequent to the date borne by the note. From the deposition of W. L. Jeffries, a member of the firm of Jeffries & Sons, we learn that the application of Olsen for the loan was forwarded to said firm "shortly prior to March 11," and that on the day last named the witness advised Dunn by telegraph of the sale of the loan. The irresistible inference from these facts is that the delivery of the note and mortgage and the payment to Olsen of the proceeds of the loan were contemporaneous acts, that they occurred as late as the 13th day of March, presumably in Cedar county, and that the former is, therefore, for all purposes, a Nebraska contract. But the laws of this state must govern the construction of the contract for another reason. The plaintiff alleges that the note was executed in Iowa, and pleads the statute of

that state authorizing the allowance of an attorney's fee
which he claims in this action. That allegation is, how-
ever, put in issue by the answer and is not supported by
any evidence in the record. We must presume, therefore,
that the laws of Iowa, so far as they relate to the subject
under consideration, are the same as ours. (*Ruth v. Lowrey*,
10 Neb., 260; *Lord v. State*, 17 Neb., 526; *Fitzgerald v.
Fitzgerald & Mallory Construction Co.*, 41 Neb., 374.)
Turning to the decisions of this court we find the question
fully settled by *Heard v. Dubuque County Bank*, 8 Neb., 10,
where, referring to the question of costs and attorneys' fees,
it is said: "We do not think that the amount of money
represented by a note or bill is made any the less certain
by reason of its containing a stipulation that if it is not
paid at maturity the maker will pay a part of the expenses
of its collection. * * * The stipulation to pay attorney
fees is harmless, to say the least, while the note is undis-
honored and entitled to pass as commercial paper. It is
only when it has become dishonored by its maker and
ceases to have any standing in the commercial world that
this provision becomes operative." It was further held
that the note therein was negotiable notwithstanding the
following provision: "The said McDonald & Co. [payees]
have full power to declare this note due and take possession
of said machine at any time they may deem themselves in-
secure, even before the maturity of the note."

It is urged however, by defendants that the note be-
ing payable in Massachusetts the question whether it is an
Iowa or a Nebraska contract is wholly immaterial, for the
reason that its character as regards negotiability must be
determined by the laws of the state in which it is, by its
terms, to be performed. It is not necessary to determine
here whether the rule contended for has any application to
mortgage securities, since what has been said respecting the
laws of Iowa applies with equal force to those of Massachu-
setts. The presumption above alluded to is not limited to

statutory enactments, but applies as well to the unwritten law of other states. (Rorer, Interstate Law, 122, and cases cited.) Assuming, therefore, that the note was not negotiable according to the laws of Massachusetts, that fact, to be available to the defendants, should have been specially pleaded and proved as any other matter material to the rights of the parties.

This brings us to the question of the plaintiff's title to the securities. The contention of the defendant, as will be inferred from what has been said, is that the indorsement by J. M. Dunn in the name of his wife is in legal effect a forgery and cannot, therefore, be made the basis of a legal title. The fact, however, that the business was conducted in her name, that she was aware of the custom of her husband in that regard, and especially of his course of dealing with Jeffries & Sons, not to mention her subsequent express ratification of his act, leaves no room to doubt his agency with power to contract in her name. But there is an additional fact of which mention was omitted in its natural order, and which should be noticed on account of its bearing upon this as well as upon another phase of the case. The coupons accompanying the note were assigned directly to Mrs. Stark, and those, seven in all, which matured prior to March 1, 1890, were paid by remittances from J. M. Dunn and presumably returned to the maker, and bearing as they did the indorsement of Mrs. Dunn, were sufficient to charge him, defendant, with a notice of her equities.

The next question discussed involves a construction of sections 39 and 46, chapter 73, Compiled Statutes, entitled "Real Estate." Section 46 merely authorizes the recording of assignments of mortgages. Section 39 provides: "The recording of an assignment of a mortgage shall not in itself be deemed notice of such assignment to the mortgagor, his heirs or personal representatives, so as to invalidate any payment made by them, or either of them, to the mortgagee." Those provisions were before us for our con-

struction in the recent case of *Eggert v. Beyer*, 43 Neb., 711, and the conclusion therein is decisive of every proposition asserted in connection with this branch of the case. It is in effect there held that the statute has no application to the holder of negotiable paper secured by mortgage whose title is acquired in the usual course of business for value before maturity, and that if the mortgagor in such case chooses to make payment to another than the holder of the security, he must do so at his peril. To the authorities there cited may be added the recent case of *Williams v. Keyes*, 90 Mich., 290, in which it is said, referring to the same provision: "The statute means no more than that the mortgagor shall not be required to search the record before making payment to the one *prima facie* entitled to receive it. In case of negotiable securities the holder alone is *prima facie* entitled to receive payment." The analysis of the subject in the cases cited is so thorough and satisfactory as to leave nothing to be added at this time, and the rule therein stated must be accepted as the law of this case.

It is contended also that whatever may have been the rights and obligations of J. M. Dunn as to P. M. Dunn, the payee of the note, or her assigns, he was authorized as trustee to execute the release and his action in that regard is a sufficient protection to the defendant in this action. But his authority must be determined from the instrument itself, which is in reality a mortgage, although on its face referred to both as a mortgage and a deed of trust. And unfortunately for the defendant's contention, it confers no authority upon the trustee to acknowledge satisfaction before the maturity of the debt thereby secured, or upon any condition except payment in full to the holder of the security, or with his consent. It should be remembered here that a wide distinction is recognized between a case like this where the trustee is a mere agent for the beneficiary, whose powers are clearly defined by the instrument creating the trust, and one in which he is the holder of the

legal title. In the latter case it is well settled, on principle as well as authority, that persons dealing with the trustee are not chargeable with undisclosed limitations upon his power. Although the rule thus stated is elementary law, it is not out of place to cite in this connection the case of *Livermore v. Maxwell*, and four other cases, 55 N. W. Rep. [Ia.], 37, which are instructive, since they are authority for the principle here applied, and for the further reason that they involve transactions of the same trustee in all essential respects identical with that presented by the record in this case. The court there say: "Even if Mr. Dunn did have authority to receive payment at maturity of the note, that did not authorize him to receive it when he did. The note was payable 'on the 1st day of December, 1890,' not on or before, yet Mr. Dunn assumed to receive payment nearly two years before it was due. It is argued that as Mrs. P. M. Dunn joined in the release of the deed, the payment should be held good as to these defendants. The defendants knew that the note was negotiable by indorsement, they had each paid interest coupons that were returned to them bearing the indorsement to the plaintiff, and they knew that neither J. M. nor P. M. Dunn had the note or coupons to surrender at that time the payment was made. We are in no doubt but that these defendants knew that the note and coupons had been transferred, and made the payment upon the mistaken belief that J. M. Dunn had authority as trustee to receive it." We agree with what is there said, as well as the conclusion reached.

Finally, it is argued that J. M. Dunn was the agent of the plaintiff and of his mother, Mrs. Stark, during the lifetime of the latter, and authorized to receive payment in their behalf; but that contention has no foundation whatever in the record. The only evidence which can be said to bear upon the question is the fact that Dunn forwarded to Jeffries & Sons the amount of the coupons as they matured. The law will not from that fact alone infer the

relation of principal and agent as against the plaintiff. The reasonable inference is that suggested by the supreme court of Iowa, viz., that the payments of both principal and interest were made by the defendant to J. M. Dunn in the mistaken belief that the latter, as trustee, was authorized to receive it; but, however that may be, it is evident that to the extent which he, Dunn, acted in a representative capacity in the receipt of the money he was the agent of the defendant Olsen and not of the plaintiff.

It follows from what has been said that the decree should have been for the plaintiff. It will accordingly be reversed and remanded to the district court for a decree in accordance with this opinion

REVERSED AND REMANDED.