HENRY M. PORTER, APPELLANT, V. ADAM OURADA ET AL., APPELLEES.

FILED MAY 5, 1897. No. 7285.

1. **Mortgages: ASSIGNMENT: PAYMENT: AGENCY: SUBROGATION.** Ourada gave his note to Toncray, due in five years, payable to his order, and secured the same by real estate mortgage. Toncray sold and delivered the note and mortgage before their maturity to Porter, but he did not record the mortgage assignment. Afterwards a

trust company took a mortgage from Ourada on the real estate to secure its loan of $1,700 to him. Instead of paying the money to Ourada the trust company retained it and promised therewith to pay off the Toncray mortgage debt, having then two years to run. The trust company paid the Toncray mortgage debt to him and caused him to release his mortgage of record without notice that such mortgage debt was then owned by Porter. Toncray was not Porter's agent, and embezzled the money. After the recording of the Toncray release and the trust company's mortgage, Stibal, in good faith, purchased, subject to the trust company's mortgage, the real estate, and parted with a valuable consideration therefor without notice, actual or constructive, of Porter's ownership of the Toncray mortgage debt or that his release of said mortgage was unauthorized. Porter then brought suit to foreclose the Toncray mortgage, making Stibal and the trust company defendants. *Held,* (1) That Stibal's title was not incumbered with the Porter mortgage (*Whipple v. Fowler,* 41 Neb., 675, followed); (2) that the record of the Toncray mortgage was notice to the trust company that it secured a debt evidenced by negotiable paper, and that it paid this debt to Toncray at its peril without receiving from him at the time the surrender of such paper; (3) that the promise made by the trust company to Ourada to pay the Toncray mortgage was a promise made for the benefit of the legal owner and holder of the debt secured by such mortgage; (4) that Porter was entitled to be subrogated to the lien which the trust company had on the land to the extent of the amount due and unpaid on the mortgage purchased by him of Toncray.

2. ———: ———: ———: —— ——. The mere fact that a mortgagee has been in the habit of collecting interest from the mortgagor and remitting it to an assignee of the mortgage is not alone sufficient to authorize the conclusion that the mortgagee's agency was such as to authorize him to collect the entire unmatured mortgage debt. (*Stark v. Olsen,* 44 Neb., 646.)

3. **Maxim.** Where one of two innocent parties must suffer a loss, he whose negligence caused the injury should bear it.

APPEAL from the district court of Colfax county. Heard below before SULLIVAN, J. *Reversed.*

*Loomis & Abbott,* for appellant.

*Phelps & Sabin, contra.*

RAGAN, C.

This is an appeal by Henry M. Porter from a decree of the district court of Colfax county dismissing his suit brought to foreclose a real estate mortgage.

There is little, if any, conflict in the evidence. The material facts are as follows: In January, 1887, Adam Ourada owned certain real estate in Colfax county. On the 31st day of January of said year Ourada became in-debted to one C. H. Toncray in the sum of $850. As an evidence of said debt Ourada and his wife executed and delivered to Toncray a note for said sum of money, payable to the order of said Toncray at a bank in Fremont, Nebraska, where Toncray resided. This note matured on the 1st day of February, 1892, and drew interest at the rate of seven per cent per annum from February 1, 1887, until maturity, such interest payable semi-annually and evidenced by ten interest notes or coupons of $29.75 attached thereto, each payable to Toncray and at the same place of payment as the principal note. The principal bond and the coupons were secured by a real estate mortgage executed by Ourada and wife on the 31st day of January, 1887, and duly recorded in the office of the register of deeds of said Colfax county on the 8th day of February, 1887. Soon after the recording of this mortgage Toncray sold, indorsed, and delivered in the usual course of business the principal note and interest notes to Henry M. Porter and delivered to him the mortgage securing the same. It does not appear that Toncray ever executed any formal assignment in writing of the mortgage securing these notes; at all events, if such an assignment was executed, it was never filed of record in the office of the register of deeds of Colfax county. Until May, 1890, Ourada appears to have made his interest payments as they matured to Toncray, and he appears to have remitted them to Porter's agent. In May, 1890, Ourada made application to the appellee, the Central Loan & Trust Company (hereinafter called the trust company), for a loan upon this land. The trust company agreed to and did make Ourada a loan of $1,700, and to secure the same took a mortgage from Ourada and wife upon this land. By agreement between Ourada and the trust company the latter, instead of paying to Ourada the $1,700,

undertook therewith to pay off and discharge all liens upon the land prior to its own mortgage. It paid off several liens on the land and paid to Toncray the principal of his loan, $850, not due until February, 1892, and paid the matured interest thereon, and caused Toncray to release his mortgage. It appears that Toncray failed to remit this money to Porter, who then owned and held the Toncray mortgage and the debt which it was given to secure. At the time the trust company took its $1,700 mortgage from Ourada it caused an abstract of title to be made of the property on which abstract appeared the mortgage made by Ourada to Toncray. When the trust company made the payment to Toncray it had no knowledge or notice of the fact that Porter then owned and held the debt which such mortgage was given to secure. In April, 1891, the appellee, John Stibal, purchased of Ourada and wife the real estate in controversy here, paid a valuable consideration for the same, and in his deed assumed and agreed to pay the $1,700 mortgage held by the trust company, it then being of record in Colfax county. Before Stibal purchased the land he caused the public records of Colfax county to be examined, and they disclosed the mortgage made by Ourada and wife to Toncray, the release of that mortgage by Toncray, and the $1,700 mortgage made by Ourada and wife in May, 1890, to the trust company. Stibal, at the time he purchased the land, had neither actual nor constructive notice that Porter owned or had ever owned the debt secured by the Toncray mortgage, and he purchased the land of Ourada believing that said mortgage had been paid in full and rightfully discharged of record. On the 15th day of December, 1892, Henry M. Porter brought this suit in the district court of Colfax county to foreclose the mortgage which had been transferred to him by Toncray, making the trust company and Stibal, among others, defendants to the action. Stibal answered alleging that he was the owner of the real estate; that he purchased it for a valuable consideration, relying upon

37

the notice afforded by the records of Colfax county that the mortgage sought to be foreclosed by Porter had been paid and released. The trust company answered, claiming also to be an innocent mortgagee of the property, and prayed for the foreclosure of its mortgage, and that it might be declared a first lien upon the real estate.

In view of these established facts, what are the rights, liabilities, and equities of Porter, the trust company, and Stibal? Stibal, having purchased and paid for this real estate a valuable consideration after the entry of the satisfaction of the mortgage by Toncray, the original mortgagee, without notice, actual or constructive, that the Toncray mortgage had been assigned and remained unpaid, and that the release thereof was unauthorized, he is entitled to protection as against the Toncray mortgage now sought to be foreclosed by Porter. (*Whipple v. Fowler*, 41 Neb., 675.) The principle upon which that case rests is that where one of two innocent parties must suffer a loss, he whose negligence caused the injury should bear it. Although Porter is an innocent holder of the debt and mortgage, yet he might have protected himself by taking a formal assignment in writing from Toncray of the mortgage purchased by him and caused it to be recorded in the office of the register of deeds of Colfax county. (*Eggert v. Beyer*, 43 Neb., 711.) And if his neglect to do this has caused the loss which either he or Stibal must bear, then, as between those two parties, the loss should fall on Porter. Stibal's title, then, to the real estate in controversy, so far as this record discloses, is subject only to the lien of the mortgage of the trust company. The trust company is not an innocent mortgagee of the real estate in question. At the time it took its mortgage the Toncray mortgage stood of record and the debt which it secured had two years to run. By the agreement with Ourada the trust company was to pay off the Toncray mortgage out of the loan it had made to Ourada. It paid this mortgage to Toncray, but Toncray had no authority to receive such payment. He did not

own the paper, nor was it in his possession, nor was he Porter's agent for the collection of this mortgage debt. The mere fact that Toncray had been in the habit of collecting from Ourada interest and remitting it is not alone sufficient to authorize the inference or conclusion that his agency was such as to authorize him to collect the entire unmatured mortgage debt. (*Stark v. Olsen*, 44 Neb., 646; *Richards v. Waller*, 49 Neb., 639.) When the trust company paid the mortgage to Toncray it knew, or must have known, from the records that the mortgage secured a debt evidenced by negotiable paper, and it paid this debt to Toncray at its peril without receiving from him at the time the surrender of the negotiable notes. (*Eggert v. Beyer*, 43 Neb., 711.) The promise made by the trust company to Ourada to pay the Toncray mortgage was a promise made to Ourada for the benefit of the legal owner and holder of the debt secured by the Toncray mortgage, and the mortgage of the trust company upon this land should be charged with the amount due Porter on the Toncray mortgage; in other words, Porter is entitled to be subrogated to the lien which the trust company has on this land to the extent of the amount due and unpaid on the mortgage purchased of Toncray.

The decree appealed from is reversed and the cause remanded to the district court with instructions (1) to take an account of the amount due Porter on the Toncray mortgage; (2) the amount due the trust company on its mortgage, and to enter a decree giving Porter a first lien upon the premises for the amount due upon his mortgage, and to give the trust company a second lien for the amount found due on its mortgage, after deducting from such amount the amount found due Porter, the costs in this entire proceeding to be taxed to the trust company and Porter in such proportion as the district court may deem just.

REVERSED AND REMANDED.