WILLIAM A. FREY, APPELLANT, V. GEORGE R. CURTIS
ET AL., APPELLEES.

FILED OCTOBER 6, 1897. No. 7465.

. **Payment of Mortgage:** EVIDENCE: AGENCY. In an action to foreclose a mortgage, the defense being payment, evidence examined and *held* insufficient to establish authority, or ostensible authority, in a third person, to whom the money was paid, to act for the holder of the note and mortgage in that behalf.

APPEAL from the district court of Chase county. Heard below before WELTY, J. *Reversed.*

*S. S. Bishop, J. C. Hayes, John M. Stewart,* and *Wheeler & Switzer,* for appellant.

*A. B. Taylor* and *N. V. Harlan, contra.*

IRVINE, C.

This was an action by Frey to foreclose a mortgage. The defense was payment. From a finding and decree in

favor of the defendants plaintiff appeals. The case be-
longs to that class, unfortunately become recently very
familiar, where the mortgagor has paid the debt to a third
person, who failed to remit to the one entitled, and the
question at issue is the authority, or apparent authority,
of that person to receive payment.

In this case the note and mortgage were made to one
W. J. Neill, the note being negotiable. · The maker was
George R. Curtis, who afterwards conveyed the mort-
gaged premises to Alexander Stock, by whom all pay-
ments were made and whose heirs defend this case.
From a printed indorsement on the blanks used, and from
some very indirect evidence, it seems that the loan which
formed the consideration had been negotiated through
the Western Farm Mortgage Company, of Lawrence,
Kansas. Plaintiff Frey, soon after the execution of the
note and mortgage, purchased them, Neill indorsing the
note and interest coupons and assigning the mortgage.
The assignment was not recorded until after the events
relied on as constituting payment. The note and all in-
terest coupons were made payable at the Third National
Bank of New York. Before the maturity of each interest
coupon plaintiff indorsed the same and gave it to bankers
in Albany, where he resided, by whom it was sent to the
Third National Bank, the place of payment. The Albany
bank is named by the plaintiff in his deposition as the
National Commercial Bank, but the indorsements on
the coupons indicate that it was M. V. B. Bull & Co.
Stock, on his part, paid each installment of interest to the
Western Farm Mortgage Company or to the Western
Farm Mortgage Trust Company of Denver, Colorado,
which, in the words of the witnesses, had "bought the
good-will" of the Kansas company. The Trust Company
remitted to the Third National Bank of New York, and
procuring the coupon delivered it to Stock. Shortly be-
fore the maturity of the note and last coupon Stock paid
the amount thereof to the Trust Company, which credited
Frey therewith on its books, but passed into the hands

of a receiver without remitting the money. Frey had no dealings whatever with the Western Farm Mortgage Company or Western Farm Mortgage Trust Company. He did not know that either of those companies had been collecting the interest on his mortgage. On the other hand, he had pursued the policy of sending the coupons through a bank to the place where they were in terms payable, and thus seeking collection in the proper and regular manner. While the case in many particulars resembles *Thomson v. Shelton*, 49 Neb., 644, where a finding favorable to the defendant was sustained, it does not fall within the rule of law therein announced, and upon which that case was decided, to-wit, that "ostensible authority is that which a principal intentionally, or by the want of ordinary care, causes or allows a third person to believe the agent to possess." Here the principal had by no affirmative act conferred any apparent authority on the alleged agent, nor had he been guilty of any negligence. While the course of dealing between the Trust Company and the mortgagor had been such as perhaps to justify the latter in believing the Trust Company to be in some way authorized to act for Frey, this was due wholly to the conduct of the Trust Company, and was not authorized or consented to by Frey, nor were those acts known to him. It has several times been held by this court that authority to collect interest installments is not alone sufficient from which to infer authority to collect the principal, where the evidences of indebtedness are negotiable and are not in the possession of the person assuming to act as agent. (*Stark v. Olsen*, 44 Neb., 646; *Richards v. Waller*, 49 Neb., 639; *Porter v. Ourada*, 51 Neb., 510.) So that, even had Frey been aware that the Trust Company had been collecting the interest, this would not estop him from denying its authority to collect the principal while he retained possession of the note, and especially before its maturity.

It is claimed that there is evidence tending to show that the note had in fact been placed in possession of the Trust

Company's agent for collection.   There is evidence that
M. V. B. Bull was the eastern agent of the Trust Com-
pany.   Whether he had any connection with the banking
firm of M. V. B. Bull & Co., through whom Frey had
transmitted the coupons to the Third National Bank, does
not appear, nor do we think that fact material to the
present inquiry.   A witness testified that a memorandum
on the books of the Trust Company showed that on No-
vember 24, 1891,—three days after the payment,—the
papers were held by M. V. B. Bull for collection.   The
books themselves were not offered in evidence, and the
testimony referred to was objected to as incompetent and
not the best evidence.   It was not the best evidence and
should have been excluded, and must now be disregarded.
It therefore becomes unnecessary to consider what effect,
if any, it might be given if properly in the case.

It is also urged that the evidence shows a custom pre-
vailing among these loan companies to collect interest
and principal on loans by them made and remit to their
customers, regardless of the provisions of the notes mak-
ing them elsewhere payable.   It is argued that the plain-
tiff had availed himself of the benefits of the Trust Com-
pany's acts in pursuance of this custom, and that he must
adopt the agent's acts as a whole or reject them alto-
gether.   Passing by the question of the validity of a cus-
tom directly in the teeth of the terms of a written con-
tract, it is to be observed that only one witness testified
to such a custom, and he did not say how long it had pre-
vailed or to what extent.   He only undertook to testify
as to transactions which had come within his own experi-
ence.   No attempt was made to show that plaintiff, a
resident of New York, knew of such custom, and cer-
tainly, under the other evidence, such knowledge was
necessary to charge him with its consequences.   (*Mil-
waukee & Wyoming Investment Co. v. Johnston*, 35 Neb., 554;
*Union Stock Yards Co. v. Westcott*, 47 Neb., 300.)

It is further urged in support of the judgment that
there was proof of actual authority.   Such proof consists

merely of the testimony of officers of the Trust Company that it was acting for Frey. This was on their part merely a conclusion, and one contradicted by all the facts of the case. At most the company was assuming to act for Frey, but without any authority so to do.

We cannot find any evidence tending to sustain the finding of the district court. The judgment is reversed and the cause remanded, with directions to enter a decree foreclosing plaintiff's mortgage.

REVERSED AND REMANDED.