HELEN W. CHANDLER, APPELLANT, V. JAMES PYOTT ET
AL., APPELLEES.

FILED FEBRUARY 17, 1898. No. 7826.

1. **Principal and Agent: PAYMENT.** A party who pays money to another to be applied on a note which such person has not in his possession, assumes the burden of showing the authority of such person to receive payment.

2. **Mortgages: PAYMENT TO AGENT.** The mere facts that a mortgagor had sent coupons, as they matured, to a certain person to whom the amounts thereby evidenced as due had been paid, and that the person so receiving such payments had delivered or even advanced the amount of such coupons to one to whom before maturity had been transferred the principal negotiable promissory note secured by mortgage, *held* not sufficient to satisfy the above requirement as to a payment to such person of principal and interest made before the same became due.

APPEAL from the district court of York county. Heard below before BATES, J. *Reversed.*

*Sedgwick & Power*, for appellant.

*Harlan & Taylor* and *J. W. Merriam, contra.*

RYAN, C.

In her petition filed in the district court of York county Helen W. Chandler prayed the foreclosure of a certain trust deed for the security of a certain negotiable promissory note of date April 1, 1889, by its terms due April 1, 1894. The payee named in this note was the Western Investment Bank of Chicago. The interest, at the rate of seven per cent per annum, was payable in semi-annual installments on the first days of April and October, respectively, as evidenced by coupons for $73.50 each. To secure the payment of said note and interest the makers thereof, Martha Pyott and James Pyott, executed a trust deed to William P. Kimball, by the terms of which, as trustee, Kimball was authorized, upon default of pay-

ment of principal or of interest existing for a certain time, to institute and prosecute foreclosure proceedings against the land described in the aforesaid trust deed, and on such proceedings to receive payment. There were paid to Kimball September 26, 1892, the sums of $1,000 as principal and $73.50 as interest. This money was never received by Mrs. Chandler, and the question in the district court was whether she must bear the loss or whether it must be borne by Wilhelm Gocke, who, meantime, had become the owner of the land described in the trust deed and had sent that money to Kimball. The judgment was in favor of the defendants.

William P. Kimball was president of the Western Investment Bank of Chicago until May 3, 1891, when said bank transferred its bankable assets to the Central Trust & Savings Bank. To close up the affairs of said Western Investment Bank its cashier, Mr. Vose, and James Frake were constituted a committee and so acted. After the transfer of the banking business above noted William P. Kimball conducted a loan business until August, 1893, when he failed. His testimony was to the effect that he never learned of the payment of the $1,073.50 above noted until his financial embarrassment did not admit of his making payment of the money to Mrs. Chandler. It is clear that, as trustee, Mr. Kimball was not authorized to receive payments unless they were made upon foreclosure proceedings instituted by him as trustee. The powers of the trustee were thus limited by the trust deed, and beyond this limitation the trustee as such had no power to act. (*Stark v. Olsen*, 44 Neb. 647.) His authority to receive the payment, concerning which this litigation has been carried on, if it existed, must therefore be found in his real or apparent agency for Mrs. Chandler, independently of his trusteeship. The testimony on behalf of Mrs. Chandler was that there was never such an agency, either real or apparent. Mr. Kimball testified that when the bank sold the note to Mrs. Chandler it was agreed between herself and himself that

the coupons and principal as they matured would be collected by the bank without expense to Mrs. Chandler. This did not at all change the status of affairs material to a consideration of this case, for there is no pretense that the $1,073.50 in dispute was ever paid to the bank. As a matter of fact, when this payment was made, the bank had not been doing business for more than a year. Mr. Kimball further testified that he always understood that, while acting as president of the bank and while doing business individually in these transactions, he was acting as the agent of Joseph B. Chandler, who was acting as agent for his wife, Helen W. Chandler. The twentieth interrogatory propounded to Mr. Kimball and his answer thereto were as follows: "You may state how frequently you saw either the plaintiff or her husband and talked with them with regard to the collection of loans that you had in your charge." Answer: "Mr. Chandler probably called seven or eight times or more per annum at the bank, or later, at my office, usually coming a day or two before the coupons became payable, bringing for collection whatever ones were maturing which belonged to his wife or himself. Occasionally I gave him a check for the total sum due before he left the office, at others the check was mailed to his address." The evidence above described, with that of an even less satisfactory nature, is that upon which depends the correctness of the finding of the district court in favor of the defendants. There is no question that the husband of Mrs. Chandler received for his wife all the payments which came into her hands and transacted all the business pertaining thereto. He testified, unequivocally, that he, in no instance, entrusted a coupon to Mr. Kimball, and that his surrender of coupons was always upon payment being made upon presentation, either to the bank or to Mr. Kimball. When the payment of $1,000 on the principal, and the interest then due was made, the note and coupon were in possession of Mrs. Chandler. The rule in such cases is that a party who pays money to another to be applied on a note,

which such person has not in his possession, assumes the burden of showing the authority of such person to receive the payment. (*South Branch Lumber Co. v. Littlejohn*, 31 Neb. 606; *Bull v. Mitchell*, 47 Neb. 647; *Richards v. Waller*, 49 Neb. 639; *Thomson v. Shelton*, 49 Neb. 644; *City Missionary Society v. Reams*, 51 Neb. 225; *Greenman v. Swan*, 51 Neb. 81; *Frey v. Curtis*, 52 Neb. 406.) In *Porter v. Ourada*, 51 Neb. 510, it was held by this court that the mere fact that a mortgagee has been in the habit of collecting interest from the mortgagor and remitting it to an assignee of the mortgagor is not alone sufficient to authorize the conclusion that the mortgagee's agency was such as to authorize him to collect the entire unmatured mortgage debt, citing *Stark v. Olsen, supra.* The testimony of Mr. Kimball as to his understanding that he was acting as an agent for Mrs. Chandler was but the statement of his own deduction. The facts from which this deduction was drawn alone were proper to be stated as evidence. If his conclusion was based upon facts which he failed to state it would manifestly be unfair to give this conclusion any weight in the determination of this case. We can consider only the facts which he stated as justifying his conclusion, and these, above stated clearly, fall short of establishing his authority to receive the $1,073.50 payment for Mrs. Chandler. The judgment of the district court is reversed and this cause is remanded with instructions to the district court to enter a decree in conformity with the views above expressed.

REVERSED AND REMANDED.