[No. 13584. Department One. May 18, 1917.]

C. W. KUCHER, *Appellant*, v. RICHARD M. SCOTT *et al.*, *Respondents.*[1]

ESTOPPEL—PERSON MAKING DAMAGE POSSIBLE. Where the owner of mortgaged real estate executed a renewal note and mortgage to a loan company and, without taking up the original, placed it in the hands of the company's secretary, who sold it to an innocent purchaser and misappropriated the proceeds, the loss must fall upon the mortgagor as the one of two or more innocent parties who placed it in the power of a third person to occasion the loss.

PRINCIPAL AND AGENT—AUTHORITY TO COLLECT MORTGAGE. A mortgage loan company that took and sold mortgages to its clients is not the agent of a buyer with authority to collect the principal, where it did not have possession of the note, from the mere fact that it collected interest from time to time, nor because the note recited that it was payable at its office.

SAME. In such a case, the company is not authorized to collect the principal by a letter inclosing the last interest coupon, assuming that the mortgage "had been closed," and directing remittance by New York draft, where the company had been advised that the note would be sent to a certain bank for collection, which was done.

SAME. Authority to collect a mortgage when due does not authorize the agent to collect prior to the due date.

[1] Reported in 165 Pac. 82.

ESTOPPEL—PERSON MAKING LOSS POSSIBLE. Where the owner of mortgaged real estate executed a renewal mortgage to the loan company before the original became due, and delivered it to the secretary without taking up the original, which had been assigned, and the secretary misappropriated the proceeds and failed to credit the payment to the account of the assignee of the original, the mortgagor must, as against the assignee, sustain the loss as the one of two or more innocent parties who placed it in the power of a third person to occasion the loss.

Appeal from a judgment of the superior court for King county, Tallman, J., entered January 8, 1916, in favor of the defendants, dismissing an action to cancel a mortgage, tried to the court. Affirmed.

*Roney & Loveless* and *Brightman & Tennant*, for appellant.

*Ralph E. Moody* and *Wilson R. Gay*, for respondent Campbell.

*Douglas, Lane & Douglas*, for respondent Scott.

MAIN, J.—The plaintiffs, being the owners of certain real property in the city of Seattle which was covered by two mortgages, claiming that one of the mortgages was invalid, but not knowing which one, brought this action for the purpose of securing the cancellation of the void mortgage, whichever one it might be. The defendants are, respectively, the owners of the two mortgages. The trial resulted in a judgment adverse to the plaintiffs' contention. From this judgment, the appeal is prosecuted.

The facts which gave rise to the litigation are substantially these: For many years, A. Robinson & Company had been engaged in the real estate, loan and insurance business in the city of Seattle. All the transactions here involved were handled by this company through its secretary, Wilbur S. Lewis, who, on March 9, 1915, committed suicide. On January 30, 1912, the appellant purchased from F. C. Riley and wife a dwelling-house, and a lot or lots which it occupied. At this time, the property was subject to a mortgage held by one John Benson in the sum of four thousand dollars. This mort-

gage and the note which it was given to secure were made payable to A. Robinson & Company and by it transferred to Benson. It was the custom of that company, when making loans, to have the note and mortgage made payable to it, and then indorse the note and assign the mortgage to the person advancing the money. The Benson mortgage was due three years after date, or on October 13, 1914. On September 9, 1912, this mortgage was purchased by Richard M. Scott, one of the respondents, and thereupon the note was indorsed to him and the proper assignment of mortgage placed of record. The interest upon the mortgage was paid every six months as it became due, to A. Robinson & Company, after the appellant had received a statement for the interest from that company. When the interest was paid, it was either sent by the company to Scott or deposited to his credit in the State Bank of Seattle.

Some months prior to the 13th day of October, 1914, the appellant was approached by Lewis with reference to a renewal, and after some negotiation, on September the 1st, 1914, the appellant and wife executed a note and mortgage, payable to A. Robinson & Company, and delivered the same to Lewis. At this time, Lewis had informed the appellant that he was getting the money from a man who resided in Portland, Oregon, but the name was not disclosed. After the note and mortgage were received by Lewis, the note was indorsed and forwarded to Portland, Oregon, to the respondent Campbell. Thereafter, and on the 5th day of September, Campbell drew a check payable to the order of A. Robinson & Company and forwarded the same to it. Lewis apparently appropriated the money which had been received from Campbell, and in the course of a few months, committed suicide. Subsequent investigation disclosed the relation of the company as affects the three parties involved in this litigation.

This is one of those unfortunate cases in which one of three persons, all of whom acted in the utmost good faith, must sustain a loss in the sum of four thousand dollars. It

is an old and settled maxim of the law that, where one of two or more innocent persons must suffer by the acts of another, he who has placed it in the power of that other person to occasion the loss must sustain it. *Merchants' Bank v. State Bank*, 77 U. S. 604; *Parker v. Hill*, 68 Wash. 134, 122 Pac. 618; *Wiswell v. Beck*, 92 Wash. 208, 158 Pac. 976.

With this principle of law in mind, the case, so far as it involves the appellant and Campbell, will be first considered. The appellant executed the note and mortgage, made payable to A. Robinson & Company, and delivered the same into the possession of Lewis, as secretary of that company. Campbell was requested by Lewis to forward his check before he received the note of the appellant, but this was not done. The check was not forwarded until the note, properly indorsed, had been received. Campbell had done no act by which he placed it within the power of Lewis to occasion the loss. On the other hand, the appellant had delivered to him the note and mortgage drawn in such form he could use them in any manner he saw fit. The appellant, having placed it in the power of Lewis to commit the wrong, is the one that should bear the loss, rather than Campbell.

There is much discussion in the briefs relative to the previous transactions of Campbell with A. Robinson & Company. It is true that, for a number of years, that company had either sold him securities or, from time to time, had made loans for him. There is no evidence, however, that would justify the inference that A. Robinson & Company was the general agent of Campbell for the purpose of making investments. Each transaction was considered separately and was approved by Campbell.

There is also a somewhat extended discussion in the briefs over the question whether the note which Campbell received was a negotiable or a nonnegotiable instrument, but this question does not seem to us to be material. The case is ruled by the principle of law above stated.

We will now consider the case of the appellant and respondent Scott. The latter was an army officer and, at different times, stationed in the Philippines and in various parts of the United States. Dating from about the year 1909, A. Robinson & Company had handled a number of transactions for him, but in each case the particular transaction was submitted to Scott and he either approved or disapproved of it. If he had money coming in to loan at times, he would write A. Robinson & Company and ask relative to that company's investing or loaning the same for him. If he had money coming to him of which A. Robinson & Company was cognizant, that company, at times, would write and suggest another loan or investment. At the time the appellant delivered to A. Robinson & Company the note and mortgage which were dated September the 1st, 1914, that company did not have possession of the Scott note.

In the month of August, prior to the time of the due date of the note, Scott wrote A. Robinson & Company that, if the mortgage was to be taken up on October the 13th, when it became due, he would send the note to the State Bank of Seattle for collection. A. Robinson & Company did not have possession of the note, the right to release the mortgage, or the possession of a release signed by Scott. The money received from Campbell was credited upon the books of the company to him and not to Scott. There was no act of Scott which placed it in the power of Lewis to cause the loss, unless (a) A. Robinson & Company was Scott's general fiscal agent; (b) the right to collect and remit the interest authorized the collection of the principal; or (c) the fact that it was payable at the office of the company was sufficient authorization for its collection. The evidence will not sustain a contention that A. Robinson & Company was the general agent of Scott for the purpose of making investments. As already stated, every transaction was submitted to Scott for his approval or disapproval. For some months prior to the time when the note

and mortgage became due, there had been no transaction between him and the company. The mere fact that A. Robinson & Company had collected the interest from time to time as it became due would not authorize that company, unless it had possession of the note, to collect the principal. 2 Jones, Mortgages (7th ed.), § 964; *Dwight v. Lenz*, 75 Minn. 78, 77 N. W. 546; *Chandler v. Pyott*, 53 Neb. 786, 74 N. W. 263; *White v. Madigan*, 78 Minn. 286, 80 N. W. 1125. The fact that the mortgage recited that it was payable at the office of A. Robinson & Company would not authorize that company to collect the principal thereof without the possession of the note. *Ward v. Smith*, 74 U. S. 447; *Stansbury v. Embrey*, 128 Tenn. 103, 158 S. W. 991, 47 L. R. A. (N. S.) 980; *Hollinshead v. John Stuart & Co.*, 8 N. D. 35, 77 N. W. 89, 42 L. R. A. 659.

Attention has been especially directed to a letter written October 22, 1914, from Fort DuPont, Delaware, which bears Scott's name, but which was not signed by him. In this letter the coupon for the last payment on the mortgage, which became due on the 13th of that month, was inclosed. The letter assumed that, since the mortgage became due on the 13th, "the same has been closed." Following this was a direction to remit with draft on New York, but that letter cannot be construed as an authorization to collect the principal, since A. Robinson & Company had been advised that the note would be sent to the State Bank of Seattle for collection, and it was subsequently sent to that bank. But, if it be assumed that A. Robinson & Company had authority to collect the principal indebtedness when it became due, this would not constitute that company the agent of Scott for the purpose of making collection prior to the due date of the note and mortgage. 2 Jones, Mortgages (7th ed.), § 964; *Lester v. Snyder*, 12 Colo. App. 351, 55 Pac. 613; *Park v. Cross*, 76 Minn. 187, 78 N. W. 1107, 77 Am. St. 630.

From the facts stated, it appears that the note and mortgage became due on the 13th day of October, 1914. The new

mortgage and note were executed and delivered to A. Robinson & Company on the 1st day of September, 1914, and the four thousand dollar check was received from Campbell on the 8th day of that month. A. Robinson & Company, after receipt of the check from Campbell, did not enter it on their books as a credit upon Scott's account. It follows, therefore, that, as against Scott, the appellant must sustain the loss.

Referring again to the question of agency, it is doubtless true that A. Robinson & Company was the agent of each of the three parties for certain purposes. The only commission paid was by the appellant. Scott and Campbell were rather regarded by the company as customers to whom securities might be sold, or from whom money could be obtained in making a loan, the commission, if any, in each instance coming from the person securing the loan or the extension of a loan. The company had been the agent of Scott for a number of specific transactions, and for the purpose of collecting interest upon the four thousand dollar note, as well as other notes. It was not his agent for the purpose of releasing mortgages or receiving payment of the principal indebtedness. The company, so far as the appellant and Campbell are concerned, was undoubtedly the agent of both for the purpose of completing a transaction such as filing a mortgage for record, seeing that the Scott mortgage was released, and returning the papers to the parties respectively entitled thereto, or retaining the same for safekeeping.

The record in this case has been given careful attention, the greater portion of it having been read a second time. While it is regrettable that an innocent party must suffer a considerable loss, yet, under the law and the facts, this is a burden which must be borne by the appellant in this case.

The judgment will be affirmed.

ELLIS, C. J., MOUNT, CHADWICK, and MORRIS, JJ., concur.