[No. 23470. Department One. August 11, 1932.]

FRANK DIETL, *Respondent*, v. LOWMAN & PELLY IN-VESTMENT COMPANY, *Appellant*, OSNER & MEHLHORN, INC., *et al.*, *Respondents*.[1]

*Hyland, Elvidge & Alvord*, for appellant.

*Edwin H. Flick* and *Herald A. O'Neill*, for respondent Frank Dietl.

*Myers & Couden*, for respondent Gertrude Sebastian.

*Lyons & Orton*, for respondent Louis Klemptner.

*Lane & Thompson*, for respondent George W. Smith.

*Hartge & Cadwallader*, for respondent Fritz Liesinger.

MITCHELL, J.—In 1921, the Yesler Logging Company, of Seattle, by J. D. Lowman, its president, and B. Pelly, its secretary, executed and delivered a series of seven interest-bearing promissory notes, numbered

[1]Reported in 13 P. (2d) 462.

consecutively one to seven, inclusive, six notes in the sum of one thousand dollars each and the other one in the sum of fifteen hundred dollars, payable three years after date to the order of Osner & Mehlhorn, Inc., of Seattle at the office of the payee in Seattle. At the same time, to secure the payment of the notes, the maker executed and delivered a real estate mortgage to Osner & Mehlhorn, Inc. In due course, the payee negotiated the notes, a one thousand dollar note and the fifteen hundred dollar note to one person, and a one thousand dollar note to each of five other persons.

In August, 1924, the Lowman & Pelly Investment Company, a corporation, of Seattle, having succeeded the Yesler Logging Company in its logging operations and in the ownership of the real property covered by the mortgage, by J. D. Lowman, its president, and B. Pelly, its secretary, renewed the notes and mortgage in its own name as obligor, for three years. The renewal notes were of the same tenor and effect as the former ones, numbered one to seven, inclusive, and payable to the order of Osner & Mehlhorn, Inc.

The 1921 notes were not taken up by the Lowman & Pelly Investment Company when the new notes were executed and delivered to Osner & Mehlhorn, Inc., nor until more than two months thereafter, during which time Osner & Mehlhorn, Inc., by substituting the new notes duly endorsed, took up the old ones from the owners and holders thereof, which, together with the old mortgage, cancelled of record October 15, 1924, were returned to the Lowman & Pelly Investment Company. Each of the notes thus returned bore upon its back at that time the cancelled endorsement of Osner & Mehlhorn, Inc., in form to a third party whose name was scratched out with ink and eraser so that it could not be understood, clearly indicating it had been negotiated prior thereto by Osner & Mehlhorn, Inc.

In August, 1927, the Lowman & Pelly Investment Company, by J. D. Lowman, its president, and B. Pelly, its secretary, procured another renewal of the notes and mortgage for three years. These renewal notes also were of the same tenor and effect as the former ones, numbered one to seven, inclusive, payable to the order of Osner & Mehlhorn, Inc. The 1924 notes were not taken up by the Lowman & Pelly Investment Company when these new notes were executed and delivered to Osner & Mehlhorn, Inc., nor until the following year, April, 1928, during which time Osner & Mehlhorn, Inc., by substituting the new notes duly endorsed, took up the 1924 notes from the owners and holders thereof, which, together with the 1924 mortgage, cancelled of record April 19, 1928, were returned to the Lowman & Pelly Investment Company. These notes thus returned had the cancelled endorsements of Osner & Mehlhorn, Inc., thereon similar to those returned in 1924.

With one exception, not material here, all the renewal notes of 1927 were endorsed and delivered to the same parties who formerly received, by endorsement, the original notes of 1921 and the first renewal notes of 1924.

In March, 1929, the Lowman & Pelly Investment Company placed with Osner & Mehlhorn, Inc., four thousand dollars to be used as payments on the outstanding notes. The four thousand dollars was misappropriated by Osner & Mehlhorn, Inc., through August Mehlhorn, Jr., and none of it ever reached the holders of the notes. It appears that the Lowman & Pelly Investment Company paid to Osner & Mehlhorn, Inc., at its office, from time to time, interest on the notes, which amounts were forwarded to the owners and holders of the notes.

Early in September, 1930, Osner & Mehlhorn, Inc.,

on account of insolvency, was placed in the hands of a receiver; August Mehlhorn, Jr., having disappeared and has not since returned. One or two days after the receiver was appointed and sometime *after the maturity of the notes given in 1927,* Dr. Louis Klemptner, the owner and holder of two of them, by his attorney, presented the two notes to B. Pelly in Seattle for payment. Pelly, a man of large and long business experience, unaware that Osner & Mehlhorn, Inc., was in the hands of a receiver or in financial troubles of any sort, promptly paid the two notes.

A few weeks later, October, 1930, this action was brought by Frank Dietl, the owner and holder of one of the outstanding notes, to recover judgment on the note and to foreclose the mortgage given to secure it. The holders of the other unpaid notes came into the action asking judgment on the notes held by them and foreclosure of the mortgage. The receiver of Osner & Mehlhorn, Inc., appeared in the action. The Lowman & Pelly Investment Company appeared in the action. The last two, each by its separate answer, claimed that the four thousand dollars given to Osner & Mehlhorn, Inc., by Lowman & Pelly Investment Company in March, 1929, was a payment to the agent of the holders of the several outstanding notes, and demanded credit accordingly on the notes sued on.

The Lowman & Pelly Investment Company, alleging that the difference between the amount it paid in full in September for the notes held by Louis Klemptner, and the *pro tanto* share of the four thousand dollars paid in March, 1929, properly applicable to those two notes was an overpayment, demanded that Klemptner be required to refund that difference. The Lowman & Pelly Investment Company further alleged a tender into court of cash sufficient to pay the remainder on all of the notes and mortgage, and demanded a cancel-

lation and surrender of the same. Proper issues were made concerning the allegations of the several complaints and cross-complaints and affirmative defenses.

Upon the trial, the court entered judgment, among other things, that the cross-complaint against Louis Klemptner be dismissed; that the several holders of outstanding notes have judgment against the Lowman & Pelly Investment Company for the face of the several notes, with interest from the last interest due date; that the mortgage given to secure the payment of the notes was a first lien upon the real estate described in it; and that the same be foreclosed and the land sold in the usual manner in satisfaction of the judgment, and for deficiency judgment in the event the amount realized at the sale of the mortgaged property was insufficient to pay costs, expenses and the amount of the judgment. Lowman & Pelly Investment Company has appealed.

The real controversy in the case is who shall stand the loss of the four thousand dollars misappropriated by Osner & Mehlhorn, Inc. The brief on behalf of appellant contains no formal assignment of errors. It discusses the record in the case generally and, as we understand, treats the case from two standpoints, claiming: (1) that Osner & Mehlhorn, Inc., acted as agent for the holders in due course of the outstanding negotiable promissory notes, and (2) that, under the equitable rule of comparative innocence, the loss must fall upon the holders of the instruments. The trial court determined the controversy against the appellant upon consideration and application of these two principles.

As to the first, appellant admits, of course, that "the question of agency is a question of fact." A portion of the record, authenticated by the certificate and signature of the trial judge, shows that, at the close

of all the testimony, he decided specifically that Osner & Mehlhorn, Inc., was not the agent of the holders of the note in receiving the four thousand dollars from the Lowman & Pelly Investment Company. Necessarily, the judgment entered reflects that view. All the principal persons connected with the controversy, other than Osner & Mehlhorn, testified personally in open court, and so did the bookkeeper of Osner & Mehlhorn, thus enabling the trial judge to better determine the ultimate effect and weight of the evidence.

A great amount of testimony, in addition to that already mentioned, was adduced in the case, and any attempt approaching success to set out all of it relative to the question of agency, within the reasonable limits of a written opinion, would be neither practical nor useful. An examination of it given in the abstract, supplemented somewhat in a number of respects by an examination of the statement of facts, shows that it preponderates in favor of the decision and conclusion of the trial judge in this respect.

█ The same result, in effect, must be reached in the application of the second principle, or rule of comparative innocence. In the same manner, in the record it appears that the trial judge held "that as between these parties, the holders of these notes and the Lowman & Pelly Investment Company, that the Lowman & Pelly Investment Company cannot prevail." The testimony on this question is equally voluminous. An examination of it rather clearly shows that the decision of the trial judge in this respect was right and justified by a preponderance of the evidence. See *Kucher v. Scott,* 96 Wash. 317, 165 Pac. 82.

Affirmed.

TOLMAN, C. J., PARKER, and HERMAN, JJ., concur.