[No. 23353. Department One. January 2, 1932.]

JULIUS PFEIFFER *et al., Respondents,* v. EMILY HEYES, *Appellant.*[1]

*J. H. Buchanan* and *Burkheimer & Burkheimer,* for appellant.

*Hyland, Elvidge & Alvord,* for respondents.

MITCHELL, J.—This action, brought by Julius Pfeiffer and wife, residents of Seattle, in October, 1930, sought to have declared paid three notes of one thousand dollars each, which they gave January 2, 1923,

[1]Reported in 6 P. (2d) 612.

payable three years after date, to the order of Osner & Mehlhorn, Inc., of Seattle, with interest at seven per cent per annum, interest to be paid quarterly, both principal and interest payable at the office of Osner & Mehlhorn, Seattle, Washington; and also to order cancelled a real estate mortgage of the same date given by plaintiffs to Osner & Mehlhorn, Inc., to secure the payment of the notes. Each of the notes states on its face that it is secured by a mortgage on real estate, described in the note.

The defendant, claiming to be the owner and holder of the notes and mortgage by assignment from Osner & Mehlhorn, Inc., to George Heyes, her husband, now deceased, and by his will to her, denied that the notes and mortgage had been paid in full, and by cross-complaint sought judgment for the balance alleged to be due in the sum of twenty-five hundred dollars and three months' interest, and for foreclosure of the mortgage. The trial court granted all the relief prayed for in the complaint. The defendant has appealed.

Osner & Mehlhorn were connected with the transaction through the personal attention of August Mehlhorn, Jr., its secretary. It appears that, on January 8, 1923, Osner & Mehlhorn endorsed and delivered the three notes and the mortgage, together with a written assignment of the mortgage, to George Heyes. The assignment of the mortgage was not recorded until after respondents had paid to Osner & Mehlhorn the full amount due on the notes and mortgage.

The testimony shows that respondents promptly paid all interest as it fell due, according to the terms of the notes, renewed the notes twice, and at one of such renewals paid five hundred dollars on the principal. All such payments were made by the respondents to Osner & Mehlhorn, who paid the same over from time to time to Heyes and wife, except it did not pay over the last

final payment of principal and interest made by the respondents. The respondents, in making payments, believed at all times that Osner & Mehlhorn was still the owner and holder of the notes and mortgage, and had no notice to the contrary until afterward.

George Heyes and his wife, of Seattle, commencing several years prior to this transaction, had a number of similar ones with Osner & Mehlhorn, who, as their agent, looked after the insurance on property covered by mortgages they purchased, and the collection of interest and principal, both partial and final.

The notes and mortgage in this case, upon the sale of them to George Heyes in January, 1923, became the community property of himself and his wife Emily Heyes. He died testate in Seattle in November, 1928, and by and through his will and the probate of it the notes and mortgages were distributed to her.

Other facts upon which formal findings were made were as follows:

"That in the year 1916, the community consisting of George Heyes and Emily Heyes his wife, commenced to do business with the said Osner & Mehlhorn, Inc., a corporation, and their method was to deliver moneys to and purchase mortgages from the said Osner & Mehlhorn, Inc.; that the money so delivered by them to said corporation was to be used for investments in first mortgages, and that from said date, according to the evidence introduced in the above entitled cause, approximately eight mortgages were purchased by the said George Heyes acting for and on behalf of the community composed of himself and the said Emily Heyes his wife; that collections were made on the principal and interest of said mortgages by the said Osner & Mehlhorn, Inc., and up to three years before the commencement of this action the moneys so collected by Osner & Mehlhorn, Inc., were accounted for and paid over to the said George Heyes and Emily Heyes his wife; that the said George Heyes and Emily Heyes his wife, had great confidence in the honesty of

the said August Mehlhorn, Jr., and constituted the said Osner & Mehlhorn, Inc., a corporation, and August Mehlhorn, Jr., their agent for the purpose of collecting not only the interest, but also the principal, and to look after their said notes and mortgages and see that the taxes and insurance on the various properties on which they held mortgages were kept up; that the said George Heyes and Emily Heyes never at any time held any of the insurance policies; that all they had were the notes and mortgages which they had purchased, and that for every mortgage so purchased by the said George Heyes and Emily Heyes an assignment thereof was given, but that in no instance was the assignment recorded in the auditor's office of King county, Washington, or at all, nor did the said George Heyes or Emily Heyes ever give notice to the plaintiffs or to any of the mortgagors whose mortgages they purchased from Osner & Mehlhorn, Inc., that the said George Heyes and Emily Heyes were the owners of said notes and mortgages; that all of said notes and mortgages were payable at the office of Osner & Mehlhorn, Inc., both principal and interest, and all of the interest on all of the mortgages was so paid to the said Osner & Mehlhorn, Inc., and the interest at all times remitted to George Heyes and Emily Heyes and a complete course of conduct was had by the said George Heyes and Emily Heyes, his wife, from the year 1916 until September 1, 1930, when August Mehlhorn, Jr., absconded.

"That after the making, execution and delivery of the said promissory notes and mortgage and their assignment to the said George Heyes, the said plaintiffs paid the interest thereon as it became due; that the said notes became due, according to their terms, on the 2nd day of January, 1926, at which time the plaintiff paid, on account of the principal of said notes, the sum of $500, and said payment was not made to Emily Heyes or George Heyes, but was made to Osner & Mehlhorn, Inc., and was applied by the said Osner & Mehlhorn, Inc., as a credit on their books of account to the said George Heyes and the said George Heyes received the same; that at no time did the plaintiffs in the above entitled cause ever know the said George Heyes or

Emily Heyes had any interest in the said notes and mortgage until after September 1, 1930; that said notes were renewed for a period of two years by the said Osner & Mehlhorn, Inc., on the due date of the mortgage, January 2, 1926, and thereafter the plaintiffs paid to Osner & Mehlhorn, Inc., the interest on said promissory notes; that the balance of said notes, to-wit, the sum of $2,500 became due on January 2, 1928, and were again renewed for a period of two years by the said Osner & Mehlhorn, Inc., and the final due date became January 2, 1930.

"That one of the conditions of the mortgage given by the said plaintiffs to the said Osner & Mehlhorn, Inc., provided that the property should be kept insured against fire, and Osner & Mehlhorn, Inc., took care of the fire insurance and had the policies of fire insurance in its possession with loss, if any, payable to said Osner & Mehlhorn, Inc.; that a fire occurred in July 1929, destroying the building on said premises covered by said mortgage, and the loss thereof was adjusted by the said Osner & Mehlhorn, Inc., and an allowance was made for the loss in the sum of $1,500; that in the month of July, 1929, at the time of the adjustment of the fire loss, the said Osner & Mehlhorn, Inc., represented that it was the owner of the mortgage and notes, but inasmuch as the notes by their terms were not due until January 2, 1930, the said Osner & Mehlhorn, Inc., refused to apply the $1,500 on said mortgage unless the plaintiffs would pay ninety days' interest in advance, and informed the said plaintiffs if they did not care to do so that Osner & Mehlhorn would retain the money in its possession which it had received by virtue of the fire insurance policy which provided that the loss, if any, was payable to the said Osner & Mehlhorn, Inc., and the plaintiffs as their interest appeared, and allow interest thereon at 7% per annum, which the said Osner & Mehlhorn, Inc., did do; that thereafter the said notes and mortgage became due on January 2, 1930, and at that time the above named plaintiffs paid $1,000 in cash and received the $1,500 credit for the insurance money and paid sufficient more to pay off the principal of $2,500 and the interest on

said promissory notes. That at the time of paying off the mortgage the said plaintiffs did not know the said Osner & Mehlhorn, Inc., was insolvent, as its office was open at the said time and it was doing business in the same manner as always, and plaintiffs had no notice or knowledge of the insolvency of said Osner & Mehlhorn, Inc.; that upon the payment of said sum of $2,500 and interest to the said Osner & Mehlhorn, Inc., plaintiffs received a receipt in full for the notes and mortgage.''

Conclusions of law and judgment were signed and entered cancelling the notes and mortgage.

The assignments of error on the appeal question those parts of the finding to the effect that the money delivered to Osner & Mehlhorn by Heyes and wife was for an investment, and that Osner & Mehlhorn and August Mehlhorn, Jr., were the agents of Heyes and wife for the collection of the principal and to look, generally, after their notes and mortgages; that the court committed error in that part of finding six with reference to the fire insurance payable to and collected by Osner & Mehlhorn. Further technical assignments are made upon the conclusions of law and the judgment entered.

Ordinarily, as here, a statement of the facts must be condensed as compared with all of the testimony, which latter in the present case fully sustains, by a preponderance, the findings and conclusions entered, including that of the agency of Osner & Mehlhorn on behalf of the appellant and the community consisting of her husband and herself during his life time.

In its last analysis, the case resolves itself into one of facts peculiar, of course, to this case, so as to make many of the authorities cited by counsel on behalf of appellant of little value. Concerning the facts, stress is laid upon the fact that, when final payment was made, Osner & Mehlhorn did not have possession

of the notes and mortgage; and the argument is made, supported by authorities, that an agent who has possession of the note has authority to collect, but one who does not has no authority to collect.

The true rule upon this subject in this state is given in *Delaney v. Nelson,* 132 Wash. 472, 232 Pac. 292, as follows:

"Appellant cites many cases which hold, or seem to hold, that one who pays to another who is not in possession of the instrument paid does so at his peril, and that it will be presumed that one is not an agent to collect a note unless he has possession of the instrument with power and authority to surrender it at the time of payment. But we think the better rule is that the fact of possession or non-possession of the note is merely evidence of the authority or lack of authority to collect it, but is not conclusive proof. In this day of complicated commercial affairs, we know that many duly authorized agents have power to collect for others, although they have not possession of the note or instrument upon which the collection is made. The authority to make collection is dependent upon all of the surrounding circumstances and the acts of the parties, and not alone upon the possession by the supposed agent of the note or other instrument upon which payments are being made. *Easton v. Littooy,* 91 Wash. 648, 158 Pac. 531; *Masterson v. Haislett,* 119 Wash. 650, 206 Pac. 359; *Campbell v. Gowans,* 35 Utah 268, 100 Pac. 397, 23 L. R. A. (N. S.) 414 and note."

See, also, *First National Bank of Seattle v. Hessell,* 133 Wash. 643, 234 Pac. 662; *Erickson v. Kendall,* 112 Wash. 26, 191 Pac. 842; *Kraus v. Dowell,* 119 Wash. 90, 204 Pac. 795; *Stephens v. Parker,* 121 Wash. 134, 208 Pac. 6.

The case of *Burtt v. Schoening,* 138 Wash. 187, 244 Pac. 381, relied on by appellant, does not hold to the contrary. The facts there were materially different from the facts in this case, and in that case reference

is made to and approval repeated of our decisions upon facts largely similar to those in the present case.

Of course, having the assignment of the mortgage recorded after the notes and mortgage had been fully paid, but before this suit was commenced, in no way invalidates the payments made by the mortgagors. Laws of 1927, p. 672, § 7; Rem. 1927 Sup., § 10596-7. There is no claim nor is there any proof that the respondents had any actual knowledge of the sale and assignment of the notes and mortgage until after respondents had completed payment of them in full.

Judgment affirmed.

TOLMAN, C. J., PARKER, HERMAN, and BEELER, JJ., concur.