[No. 23415.   Department Two.   June 1, 1932.]

CARL NICKLISCH *et al., Respondents,* v. TERESA FLYNN
*et al., Appellants.*[1]

[1]Reported in 11 P. (2d) 1066.

*Lyons & Orton* and *Hayden, Merritt, Summers & Bucey,* for appellants.

*Hyland, Elvidge & Alvord, Rummens & Griffin, Miller & Weiss, Lewis & Black, Ned Roney,* and *Lane & Thompson,* for respondents.

BEALS, J.—During the year 1912, defendant Teresa Flynn and her husband, being the owners of a lot in the city of Seattle upon which there had been constructed a hotel, mortgaged the same to Osner & Mehlhorn, Inc., a corporation, to secure a note for $4,000, drawn in favor of the mortgagee, payable in three years. Mr. Flynn died during the following year, and his widow became the sole owner of the property.

The mortgagee assigned the mortgage to one Carl Nicklisch, the assignment being regularly recorded, although it was not drawn to the attention of Mrs. Flynn, who regularly paid her interest to the original payee named in the note, by whom it was turned over to the assignee. Prior to October 6, 1915, the date of maturity of the note, Mrs. Flynn learned that the note and mortgage had been transferred to Mr. Nicklisch, and she personally arranged with him for an extension of the note at a slight reduction in interest, and thereafter for two years she paid the accruing interest to Mr. Nicklisch.

In 1917, the hotel having been destroyed by fire, Mrs. Flynn decided to improve her property, and for this purpose borrowed $12,500 from Osner & Mehlhorn, Inc., giving the company eleven promissory notes ag-

gregating the amount referred to, secured by a mortgage. August Mehlhorn, Jr., the manager of the corporation, attended to all matters in connection therewith, and out of the proceeds of the new loan paid Mr. Nicklisch the amount due him on the prior mortgage.

Osner & Mehlhorn, Inc., who will hereinafter be referred to as the Mehlhorn Co., sold to various persons the eleven promissory notes secured by the mortgage, Carl Nicklisch buying $5,000 worth thereof, but the mortgage securing the notes was never assigned, it remaining of record in the name of the original mortgagee. Mrs. Flynn paid to the Mehlhorn Co. all the interest due on the eleven notes, and testified that she did not know that the company had sold any thereof. Mrs. Flynn always paid her interest in a lump sum, computed upon the whole indebtedness, and did not have in mind the fact that she had executed eleven notes rather than one.

March 7, 1918, Mrs. Flynn executed a second mortgage in favor of the Mehlhorn Co. to secure a promissory note in the sum of $2,000. Interest on this note was also paid to the Mehlhorn Co., which continued to own the second mortgage.

During the month of October, 1922, the Mehlhorn Co. made to Mrs. Flynn a new loan in the sum of $14,000, evidenced by twelve promissory notes for different amounts aggregating the amount of the loan, all due three years after date. The debts evidenced by the promissory notes secured by the two mortgages above referred to were paid out of the proceeds of this mortgage. Mr. Nicklisch received his money, and immediately purchased $5,000 worth of the new notes.

The remaining notes evidencing the new loan, aggregating $9,000, were, within a few weeks after the transaction was closed, sold by the mortgagee as follows: To Henry J. Ufen, a $500 note; to C. E. Ahues, a

$1,000 note; to G. Kreutziger (the father of plaintiff Charlotte Brydges, to whom the note was assigned in May, 1927), a $500 note; to Andrew Willers (from whom his son, A. J. Willers, derives title), a note for $1,000; to Henry and Theresa Bune, three notes aggregating $3,500; to Henry Auernheimer (predecessor in interest of plaintiff Henry G. Auernheimer), a note for $1,000; and to Adele Edwards (from whom plaintiff George W. Smith, whom Miss Edwards married after purchasing this note, derives his title), a note for $1,500.

All of these notes were endorsed "Without Recourse" by the Mehlhorn Co., which never executed any assignment of the mortgage securing the notes, the mortgage standing of record at all times in the name of the original mortgagee. Mrs. Flynn continued to pay her interest to the Mehlhorn Co., and when the notes secured by the mortgage became due October 25, 1925, it was agreed between Mrs. Flynn and August Mehlhorn, Jr., that the indebtedness should continue to run, which it did, without any definite understanding, until May, 1930, Mrs. Flynn paying her interest to Mehlhorn Co. every three months.

Tower Savings Bank was organized as a banking corporation during the month of September, 1929, Mr. Mehlhorn being one of the incorporators, a stockholder and one of the directors. Early in April, 1930, Mr. Mehlhorn suggested that the bank make a new loan in the sum of $14,000 on Mrs. Flynn's property, and after investigation, the bank agreed to loan $10,000 thereon. This matter was explained to Mrs. Flynn, Mr. Mehlhorn stating that he would accept a second mortgage on the property in the sum of $4,000 to make up the difference between the amount which the bank would loan and the amount due on the old notes.

Mrs. Flynn then, at Mr. Mehlhorn's suggestion, executed an application to the bank for a loan in the sum of $10,000, pursuant to which the bank prepared a note for that amount, together with a mortgage securing the same. These documents Mrs. Flynn signed in Mr. Mehlhorn's office and delivered to him, he turning them over to the bank. June 7, 1930, the bank sent its check to the Mehlhorn Co. for $9,856.56, being the amount of the $10,000 loan, less expenses. Four days later, Mrs. Flynn executed to the Mehlhorn Co. seven promissory notes aggregating $4,500, together with a second mortgage on the property securing payment thereof.

As part of its investigation of the proposed loan, the bank secured a report on the title of the property, which, among other matters, showed that neither the $12,500 mortgage nor the $2,000 mortgage had ever been satisfied of record. The report also, of course, showed unsatisfied the $14,000 mortgage. The report did not indicate the number of notes secured by these mortgages (the mortgages themselves, however, containing this information), and the bank assumed that the notes secured by the mortgage were all owned by the Mehlhorn Co., the original mortgagee. When the bank transmitted the proceeds of the $10,000 loan to Mehlhorn Co., it requested that company to satisfy of record the three prior mortgages, which Mr. Mehlhorn promised to do, but never accomplished. Mrs. Flynn and the bank both assumed that all the previous notes had been paid and the mortgages satisfied, and that the entire indebtedness against the property consisted of the bank's mortgage for $10,000 and the Mehlhorn Co.'s second mortgage for $4,500.

During the month of August, 1930, plaintiff Carl Nicklisch called at Mrs. Flynn's home, taking with him

Mrs. Flynn's notes aggregating $5,000, being a portion of the notes secured by the $14,000 mortgage, and requested payment thereof; this being, according to Mrs. Flynn's testimony, the first information she had of the fact that any of her notes were owned by any person other than the Mehlhorn Co. She at once took the matter up with Mehlhorn, who promised to adjust the matter, putting her off for a few days, when he absconded. It is not contended by any of the persons who purchased Mrs. Flynn's notes from the Mehlhorn Co. (with the exception of Mr. Nicklisch) that information was ever conveyed to Mrs. Flynn that her notes had been transferred.

Shortly after Mr. Mehlhorn's disappearance, this action was commenced by Mr. Nicklisch and the other holders of the twelve notes secured by the $14,000 mortgage, plaintiffs alleging default in the payment of interest and principal due on these notes and asking for judgment thereon, together with a foreclosure of the mortgage. George R. Drever, as receiver of the Mehlhorn Co. and as trustee in bankruptcy thereof, was named as a defendant in the action, together with Tower Savings Bank. The receiver-trustee answered, admitting his possession of the notes aggregating $4,500, secured by the second mortgage, and the bank answered, pleading that plaintiffs' notes had been paid out of the proceeds of the $10,000 loan which it had made and the proceeds of the $4,500 loan made by the Mehlhorn Co., secured by the second mortgage.

The action, being equitable in its nature, was tried to the court, and resulted in a judgment in plaintiffs' favor establishing plaintiffs' $14,000 mortgage as a first lien upon the property. The decree expressly adjudged that the bank's $10,000 mortgage was junior to plaintiffs' mortgage.

316

From this decree, Teresa Flynn and the bank have appealed, contending that plaintiffs' notes were fully paid by the proceeds of the mortgage to the bank and the mortgage to the Mehlhorn Co., above referred to, appellants contending that the Mehlhorn Co. was the authorized agent of respondents, and each of them, with authority to accept payment of the notes; that the notes sued on are non-negotiable, and that, therefore, payment to the Mehlhorn Co., the original payee therein named, without notice of any transfer of the notes, binds respondents as assignees thereof; and because payment to the Mehlhorn Co. was authorized in law, no assignment of the mortgage securing the notes ever having been placed of record.

Appellants have joined in the appeal and in their brief, in which are set forth forty-one assignments of error. These may all be discussed under the general contention that the decree entered is not supported by the evidence, and that, on the record, the decree should be reversed and the cause determined in appellants' favor.

Appellants argue that the notes owned by respondent are non-negotiable, and that, for this reason, payment to the Mehlhorn Co., the original payee, without notice of any assignment of the notes, canceled the notes and is binding upon respondent. Notes in form similar to those owned by respondents were considered by this court in the recent case of *Koppler v. Bugge, ante* p. 182, 11 P. (2d) 236, in which it was determined that such notes as are here in question are negotiable. This question, therefore, has been determined contrary to appellants' contention.

There is no testimony in the record to the effect that appellant Teresa Flynn had been informed of the fact that the Mehlhorn Co. had assigned her notes, with the exception of the evidence of respondent Nicklisch,

who testified that, during the year 1926, he met Mrs. Flynn, in company with another lady, on the street, and had a conversation with her, in which she asked the witness if he was still interested in the notes, to which he replied in the affirmative, and asked her if the mortgage had been renewed, to which she replied that it had been. Mrs. Flynn denied having had any such conversation with Mr. Nicklisch, but the trial court made a finding to the effect that Mr. Nicklisch had conveyed to Mrs. Flynn the information that he was still interested in the promissory notes. Examination of the record convinces us that the evidence does not preponderate against this finding, and we adopt the substance thereof as an established fact in the case.

It clearly appears from the evidence that Mrs. Flynn constituted Mehlhorn her agent for the purpose of procuring from appellant bank a new loan, the proceeds of which were to be used in liquidating her $14,-000 indebtedness to the Mehlhorn Co. Mrs. Flynn signed an application to the bank for a loan in the sum of $10,000, and delivered the application to Mehlhorn.

Cases such as this, which arise because of the dishonesty of an agent who represented both parties to a transaction, frequently present, as does this case, close questions of extreme difficulty. Mehlhorn was, of course, respondents' agent for certain purposes. The extent of this agency as regards the different respondents evidently varied somewhat in degree, his authority as to some being, as matter of law, because of the course of dealing between the parties, greater than in the cases of others of the respondents.

Mehlhorn was also, for some purposes, and in connection with several transactions, Mrs. Flynn's agent, and we are satisfied that, as matter of law, it must be held that he was, for certain purposes at least, the agent of appellant bank. It is evident that Mrs. Flynn

relied implicitly upon Mehlhorn, both trusting him with her money and accepting as true his word as to the status of her indebtedness. She also followed his advice in connection with matters concerning her property. The same may be said of respondents in their dealings with Mehlhorn, and it is evident that appellant bank had implicit confidence in the man, who was, at the same time, the owner of some of its stock and one of its governing directors.

It is a well established doctrine that,

". . . where a loss that is occasioned by a wrongful act of a third party must fall on one of two innocent parties, the one whose conduct made the loss possible must bear it." *Kiley v. Bugge,* 165 Wash. 677, 5 P. (2d) 1038.

It would seem a logical application of this doctrine to hold that the innocent party who entrusts money, or such paper as Mrs. Flynn delivered to Mehlhorn, to a defaulter, who is the agent of that party and another, with instructions to pay the money, or the proceeds of the paper, to the other party, must stand the loss occasioned by the larceny of the money, unless it clearly appears that the money has been paid over to the third party and stolen from him by the dishonest agent. Appellant Flynn entrusted Mehlhorn with her application for a loan directed to appellant bank, and later, with the note and mortgage in the bank's favor. She also delivered to Mehlhorn her note for $4,500, together with her second mortgage securing the same. She did all this under the impression that Mehlhorn owned the notes which she was endeavoring to pay.

Regardless of the forms of accounting entered upon the books of the Mehlhorn Co. following this transaction, no money ever reached respondents, and, after carefully considering all the facts of the case as disclosed by the record, together with the finding of the

trial court on the disputed question of fact between Mrs. Flynn and Mr. Nicklisch, and giving due weight to all the circumstances, we are of the opinion that Mehlhorn embezzled appellant Flynn's money and not that of respondents, and that Mrs. Flynn, therefore, must bear the loss.

Appellants cite the case of *Pfeiffer v. Heyes,* 166 Wash. 125, 6 P. (2d) 612, in support of their contention that Mehlhorn embezzled respondents' money, not that of appellants. The case cited arose because of other dishonest acts on the part of August Mehlhorn, Jr., and is, in many particulars, similar to the case at bar. In that action, the plaintiffs' situation corresponded, generally speaking, to that of appellant Teresa Flynn, and the action was instituted for the purpose of obtaining a decree declaring paid three notes which plaintiffs had executed to the order of the Mehlhorn Co., and which that company had sold to George Heyes, defendant's testator. The plaintiffs paid the amount due on the notes to the Mehlhorn Co. in good faith and without knowledge that they had been assigned, and this court affirmed the decree of the lower court adjudging that the notes had been paid.

In the case cited, it appeared that the notes executed by the plaintiffs had been twice renewed, a considerable payment on account of the principal having been made on one of the renewal dates, which payment had been by the Mehlhorn Co. turned over to its assignee. The trial court expressly found that the Mehlhorn Co. and August Mehlhorn, Jr., had been by the defendants constituted their agent for the purpose of collecting not only the interest but the principal of the notes, as well as defendants' general agent for other purposes, this course of conduct having been followed for approximately fourteen years; that the Mehlhorn Co. had, while the indebtedness existed, adjusted a fire loss

and collected from the insurers $1,500, covering the damage. Careful comparison of the opinion of this court in the case cited with the situation here presented convinces us that the former case is not here controlling and that the case at bar is governed by other principles.

■ The situation presented by the appeal of the appellant bank must now be considered. After examination and appraisal of the property by the bank's agents and the delivery to the bank of Mrs. Flynn's application for a loan, a report on the title to the property was prepared on the bank's order, which report was introduced in evidence and disclosed the following encumbrances standing against the lot in question: (1) The $12,500 mortgage executed by Mrs. Flynn October 2, 1917; (2) the $2,000 mortgage executed by her March 7, 1918; (3) the $14,000 mortgage secured by the notes which are the subject matter of this action;

(4) "Unrecorded mortgage dated October 25, 1922, to secure payment of $1,000.00 disclosed by inventory filed in the matter of the estate of Andrew Willers, Sr., deceased. Said Andrew Willers, Sr. died testate August 25, 1927, and his estate was probated in the superior court of King county, Washington, cause No. 42733. On July 18, 1928, hearing was had on the final report and petition for distribution and distribution was ordered made to the children of decedent hereinafter named, but no formal decree of distribution has yet been entered. If said mortgage is on the premises above described, the same should be recorded and satisfaction executed by the children of Andrew Willers should be obtained and recorded. The following are the children of said decedent: Andrew J. Willers, Marie Anna Woillard, John F. Willers, Max J. Willers, Joseph H. Willers, Henry J. Willers, Lena Verschueren, Lucy Rhodes, Sophia Manzo and Louis Willers."

The paragraph quoted refers to one of the notes secured by the $14,000 mortgage.

It appears it was the custom of the bank to receive a preliminary report on the title to property upon which it contemplated loaning money; and that, after the closing of the transaction, a final title search and report would be made, which, it was contemplated, would show the bank's mortgage as a lien upon the property. No such final search and report was made in the instant case. Under date June 7, 1930, appellant bank turned over to the Mehlhorn Co. the proceeds of the $10,000 mortgage, with the following letter:

"Osner & Mehlhorn,                       June 7, 1930.
"Mehlhorn Building,
"Seattle, Washington.
        "Re: Teresa Flynn—Loan No. 171.
"Gentlemen:
"Please find enclosed our check in the amount of Nine Thousand Eight Hundred Fifty-six Dollars and fifty cents ($9,856.50) which represents the balance of a Ten Thousand Dollar ($10,000.00) mortgage executed by Teresa Flynn under date of May 27, 1930, as per following statement:

| Loan | | $10,000.00 |
|---|---|---|
| Appraisal Fee | $100.00 | |
| Loan Expense | 43.50 | |
| Chk. Osner & Mehlhorn | 9,856.50 | |
| | $10,000.00 | $10,000.00 |

"We also enclose herewith the Title Report covering the property under this mortgage and we ask that the 1928 and one-half the 1929 taxes be paid, or if the first half of the 1929 taxes have not already been paid that the full amount of the 1929 taxes be paid. We also ask that the mortgages under paragraphs 2, 3 and 4 be satisfied of record and that the unrecorded mortgage under paragraph 5 be recorded and this satisfied of record, also that sufficient money be held in abey-

ance until the face of the building has been painted and the brick front and north side be repointed.

"Kindly mail to this office sufficient fire insurance to cover the amount of this mortgage.

"Thanking you, we are

"Yours very truly"

It clearly appears from the testimony that it was understood between appellant bank and Mehlhorn that the latter was to take from appellant Flynn a second mortgage covering the excess of the $14,000 mortgage over the proceeds of the mortgage to the bank, and that Mehlhorn was to pay certain taxes which were liens against the property and satisfy all of the pre-existing mortgages which the bank understood were owned by the Mehlhorn Co., the original mortgagee therein named. Some money was also to be spent in improving the building, as stated in the bank's letter.

One of the bank's agents testified that, on two occasions, he sent a messenger to the office of the Mehlhorn Co. for the purpose of procuring the satisfactions of the prior mortgages, and that the agent himself visited Mehlhorn's office for this purpose, beside making several attempts to reach Mehlhorn over the telephone, none of which attempts availed anything. The report on the title submitted to the bank was never referred to the bank's attorney, nor did the bank make any effort to discover the true situation as regards the title, save such questions as its officers propounded to Mehlhorn concerning the same.

One of the bank's agents testified that he requested the title company to waive the matter referred to in paragraph 5 of its report referring to the "unrecorded mortgage," which the title company agreed to do upon receipt of Mrs. Flynn's affidavit to the effect that the unrecorded mortgage did not affect the property under examination. No such affidavit was ever procured.

Bearing in mind the relations of the different parties to this proceeding, one with another, we are of the opinion that the trial court correctly held that appellant bank elected to rely upon Mehlhorn, one of its directors, and that, by its conduct, appellant bank has placed itself in such a position that, as far as respondents are concerned, it must bear any loss occasioned by Mehlhorn's default. We are satisfied that, under the circumstances disclosed by the record, it must be held that Mehlhorn embezzled the money of appellant bank, rather than that of respondents. It is evident that the bank relied implicitly upon Mehlhorn, and this after notice to it in the report on the title to the property that matters existed which, at least, called for some investigation before proceeding to close the loan.

Appellant bank knew, of course, that the proceeds of the loan which it was making would be insufficient to pay the amount due on the $14,000 mortgage. This is of some importance in determining whether or not, in receiving from the bank the proceeds of its loan, Mehlhorn was acting as the bank's agent or as agent of respondents. Whether or not Mehlhorn had authority from respondents to accept payment of their notes, it is manifest that he had no authority to accept from a third party, the bank, a sum less than the amount necessary to pay all of respondents' notes, and then divide such sum between respondents in accordance with his judgment, or pay some of their notes and not others, as he might see fit. There was no established order of priority among respondents, and while the bank knew nothing of respondents' ownership of the notes, but assumed that Mehlhorn owned the paper secured by the mortgage, the circumstances show that the bank chose to trust Mehlhorn and rely upon him to accomplish the clearing of the title to the

property and the establishment of its loan as a first lien thereon.

We are not here concerned with the rights of the purchaser of a mortgage from one in whose name it stands upon the public records. This case is to be determined upon the law of agency, as applied to the acts of one who was at the same time the agent (as to some a disclosed agent, as to others undisclosed) of different parties dealing with matters affecting the same property in such manner that conflicting claims thereto arise. The actual notice which appellant bank received from the title insurance company, coupled with evidence as to its dealings with Mehlhorn in connection with the $10,000 loan, require a holding that, up to and including the conversion of the proceeds of the bank's loan by Mehlhorn, he was acting as the bank's agent.

The opinion of this court in the case of *Kucher v. Scott*, 96 Wash. 317, 165 Pac. 82, has some bearing upon the general principles here involved, and supports our conclusion. The cases of *Burtt v. Schoening*, 138 Wash. 187, 244 Pac. 381; *Pacific Savings & Loan Assn. v. Corbett*, 155 Wash. 45, 283 Pac. 479; and *Steele v. Stocker*, 11 Ill. App. 143, are also in point in connection with questions here presented.

Respondent Smith confesses that the judgment entered as to him is erroneous in that the same provides for interest in his favor upon his $1,500 note from April 25, 1930, whereas Mr. Smith testified that the interest on his note was paid up to July 25, 1930.

The judgment appealed from will be modified by changing the date from which interest upon respondent Smith's note will be computed, and, as modified, will stand affirmed. Respondents will recover their costs.

MAIN, HOLCOMB, and MILLARD, JJ., concur.

Tolman, C. J. (dissenting)—I am unable to follow the majority to the full extent.

As I read the record, I am unable to see any negligence or inattention to her affairs on the part of the appellant Teresa Flynn. At all times, she paid her money to Osner & Mehlhorn, Inc., for the holder or holders of her notes, whoever they might be. Of course, she assumed that her notes belonged to Osner & Mehlhorn, Inc., and if she had any notice at all, which I doubt, sufficient to cause her to think otherwise, that very notice and the surrounding circumstances clearly indicated that any other person who might hold any of these mortgage notes was represented by Osner & Mehlhorn, Inc., and had given that corporation full authority to collect both principal and interest.

Moreover, the various respondents, or at least most of them, are, in my judgment, estopped by their conduct to deny that Osner & Mehlhorn, Inc., had full authority to act for them and each of them in the collection of both interest and principal. The fact that the notes were long overdue and the holders looked only to Osner & Mehlhorn, Inc., to collect, extend or permit the situation to continue, conclusively demonstrates that the noteholders had fully authorized Osner & Mehlhorn, Inc., to represent them.

With possible exceptions as to one or two, the respondents are in exactly the same position legally and morally as was the appellant, Emily Heyes, in the case of *Pfeiffer v. Heyes,* 166 Wash. 125, 6 P. (2d) 612, cited by the majority; and since Osner & Mehlhorn, Inc., were respondents' agents, with full power to collect both principal and interest, the money paid by Mrs. Flynn and caused to be paid by her to Osner & Mehlhorn, Inc., was paid to the person authorized by law to receive it, and Mrs. Flynn's debt was thereby discharged.

I recognize the rather gross negligence of the Tower Savings Bank, but it was not the agent of Mrs. Flynn, and its negligence can not be imputed to her.

I therefore dissent.