[No. 24575. Department Two. December 18, 1933.]

WILLIAM E. NICHOLS, *Appellant,* v. CLINTON A. McDOUGAL *et al., Respondents.*[1]

[1]Reported in 27 P. (2d) 699.

*Robert D. Hamlin,* for appellant.

*Wilbur Zundel, John Mills Day,* and *Paul W. Houser,* for respondents.

BLAKE, J.—This case presents the problem of where the loss shall fall, as between mortgagor and mortgagee, for the defalcations of a loan broker. The plaintiff brought the action to recover the full amount of a promissory note for one thousand dollars, and to foreclose a mortgage given to secure it. The defendant answered, alleging that all but $312.50 of the principal of the note had been paid, and pleaded tender of interest on that amount keeping the loan in good standing. The defendants Fiebig also filed a cross-complaint against the defendants McDougal and Peternell, in the nature of an action for damages for breach of warranty against encumbrance. They prayed that, in the event the mortgage should be foreclosed for the full amount of one thousand dollars, they have judgment over against the McDougals and Peternells for the amount of the judgment in excess of $445, the amount they assumed when they purchased the property from the McDougals.

The court entered judgment dismissing plaintiff's complaint. Consequently, there was no adjudication of the issues raised by the cross-complaint. Plaintiff appeals.

In 1922, and for many years prior, E. E. Simpson had been engaged in the business of loaning money for other people on real estate mortgages. December 9th of that year, one Musiel, through Simpson's intervention as agent, executed three notes, payable to appellant, as follows: One for one hundred dollars, payable one year from date; one for one hundred dollars, payable two years from date; and one for one thousand dollars, payable three years from date. Interest at the rate of eight per cent per annum was payable semi-annually. The notes provided that both interest and principal be paid at Simpson's office in Seattle. To secure the notes, Musiel executed a mortgage on lots 32 and 33, block 6, of Second Subdivision of Rainier Beach, in King county. The notes and mortgage were at all times in the possession of appellant.

In August, 1925, the respondents McDougal became the owners of the property. The two one hundred dollar notes had been paid at maturity to Simpson, who transmitted the payments to appellant, who then turned the canceled notes over to Simpson to be returned to the maker. All interest payments also had been made to Simpson when due, and he had transmitted them to appellant.

In December of 1925, when the one thousand dollar note became due, the McDougals asked Simpson if he could obtain an extension of the loan for two years. This was consented to by appellant. Thereafter, the McDougals made the semi-annual interest payments to Simpson, who transmitted such payments to appellant.

In December of 1927, the McDougals again asked for an extension—this time for three years, with the privilege of making monthly payments on the principal. Nichols consented to the extension. He was not advised by Simpson, however, that the McDougals de-

sired the privilege of making monthly payments on the principal. On the other hand, Simpson undertook to grant that privilege to the McDougals. When they asked him if they should not have Nichols' written consent to make principal payments in that manner, Simpson assured them that it was all right, that he was Nichols' agent and had authority to receive payments on the principal in monthly installments. Thereafter, the McDougals made monthly payments of thirty dollars on the principal to Simpson. These were never transmitted to Nichols.

In June, 1929, the McDougals sold the property, on contract, to the respondents Fiebig, and later assigned their vendor's interest in the contract to respondents Peternell. The Fiebigs assumed the balance of the mortgage debt, upon which, up to that time, the McDougals had paid $555. In December, 1930, when the loan was due under the last extension to McDougals, the Fiebigs applied to Simpson for a further extension of three years, with the privilege of making payments on the principal from time to time. Nichols consented to the extension of the loan, but he was not advised by Simpson that the Fiebigs had paid, or expected to pay, any installments on the principal prior to the extended due date. The Fiebigs paid, all told, $132.50 on the principal at various times before the suit was brought.

Simpson appropriated to his own use all these payments on account of principal. During the whole period, however, he remitted semi-annual interest to Nichols on the full amount of one thousand dollars on the interest-paying dates, as provided in the note.

In passing, it should be noted that appellant never met or contacted any of the respondents until shortly before the suit was commenced. None of the respondents had ever attempted to see him concerning the extension of the mortgage debt, although they had ac-

tual and constructive knowledge that he was the payee and owner of the note and mortgage. It should also be noted that respondents paid Simpson a commission for procuring the extension in each instance.

The essence of the problem with which we are confronted is whether, under the facts, Simpson had ostensible authority to make collections of principal before the date it was due under the various extension agreements. It is not contended that he had express authority. The extension agreement to which Nichols consented did not contain any privilege of paying the principal prior to the extended due dates. The question to be determined is whether he is bound by Simpson's agreement to receive payments of principal before the extended due dates.

In approaching the problem, it is well to revert to some fundamental principles of agency applicable to situations of this character. The authority of an agent to receive payments of principal and interest does not authorize him to receive such payments except on the dates when they are due under the contract. Mechem on Agency (2d ed.), § 958; Jones on Mortgages (8th ed.), § 1231; *Kucher v. Scott,* 96 Wash. 317, 165 Pac. 82. Payment to an agent who does not have possession of the note and mortgage is made at the peril of the payor. *Burtt v. Schoening,* 138 Wash. 187, 244 Pac. 381. The extent of an agent's authority cannot be established by his own acts and declarations. *Allen v. Farmers & Merchants' Bank of Wenatchee,* 76 Wash. 51, 135 Pac. 621. Ostensible authority can be inferred only from acts and conduct of the principal. *Bowles Co. v. Clark,* 59 Wash. 336, 109 Pac. 812, 31 L. R. A. (N. S.) 613. An agent, authorized to receive payment, has no implied authority to extend or accelerate the maturity of the obligation. Mechem on Agency (2d ed.), § 956.

The maker of a note or mortgage, who makes payment before maturity of the obligation, can escape the consequences of these rules only by showing express authority of the agent to so receive payments, or ratification by the principal, or a general agency. *Kucher v. Scott, supra.* As we have seen, there was no express authority in Simpson to collect any principal of the indebtedness before it was due. There was no ratification of such collections by Nichols, because he denied Simpson's authority to make them immediately upon being apprised of the facts.

So, the judgment can be sustained only upon the theory that Simpson was Nichols' general fiscal agent. *Kucher v. Scott, supra.* Respondents contend he was. Coupled with this contention, they assert that Nichols is estopped to deny Simpson's authority to receive the payments on principal prior to the date due. Of this latter phase of respondents' contention, little need be said. Nichols said nothing, did nothing, knew nothing, about the payments being so made. On the other hand, respondents accepted Simpson's declarations of his authority at their face value. The respondents knew nothing of the extent of business done by Nichols through Simpson, nor the method in which that business was handled. We find no element of estoppel, as such, in the record. 2 Pomeroy, Equity Jurisprudence (4th ed.), § 805; *Allen v. Mitchell,* 99 Wash. 305, 169 Pac. 826.

As tending to establish a general agency, the court found that Simpson, with Nichols' consent, retained twelve and one-half per cent of all interest collected as commissions for making collection; that Simpson kept a general ledger account of his transactions with Nichols, rather than treating each loan as a separate transaction; that, on one occasion, Simpson collected the principal of a loan and gave Nichols his note for

the amount, instead of the money; that Nichols had placed a number of loans through Simpson. The court found further that,

". . . in connection with said loans, the said Simpson was specifically authorized to collect interest and principal, when due, and all amounts were payable at the office of Simpson; that on all occasions the said Simpson collected the principal and interest without having possession of the notes and thereafter turned the principal over to Nichols, who in turn delivered the notes to Simpson or credited the interest payment on the back of the notes; that in closing all of said loans the checks were made payable to Simpson and he paid the money to the mortgagors."

It will be noted that the findings in these respects are quite similar to some of the findings set out in the case of *Pfeiffer v. Heyes,* 166 Wash. 125, 6 P. (2d) 612, a case in which respondents place much reliance. We do not think, however, that the findings are sufficient to establish a general agency or to bring this case within the rule of that case. That was an action by the mortgagor to cancel three notes and a mortgage executed and delivered to Osner & Mehlhorn, as payee and mortgagee. The latter sold the notes and assigned the mortgage to Heyes, but the assignment was never recorded. The mortgagor was never advised of the assignment, and continued to make payments of principal and interest, when due, to Osner & Mehlhorn, assuming and believing that the latter was still the owner of the notes and mortgage.

Here, the mortgagors knew they were dealing with an agent. They were bound to know the extent of his authority. They were not misled by the manner in which Simpson handled Nichols' account, because they did not know about it. Nor, for that matter, did Nichols. So far as he was concerned, each loan was a distinct and separate transaction. Simpson was in no

sense his fiscal agent. At no time did he leave funds in Simpson's hands for investment generally in mortgage loans.

The result in a case of this character is bound to seem harsh, whichever way it is decided, but we feel that the judgment of the trial court cannot be sustained without doing violence to well established and, what we believe to be, sound principles of the law of agency.

There are several recent cases dealing with kindred phases of the subject, which in principle are controlling here. *Bjorkstam v. Federal Land Bank,* 138 Wash. 456, 244 Pac. 981; *Koppler v. Bugge,* 168 Wash. 182, 11 P. (2d) 236; *Liska v. Beckmann,* 168 Wash. 489, 12 P. (2d) 599; *Ross v. Johnson,* 171 Wash. 658, 19 P. (2d) 101; *Hink v. Mehlhorn,* 174 Wash. 351, 24 P. (2d) 1061.

The judgment is reversed, and the cause remanded with directions to enter judgment for the appellant for one thousand dollars, with interest from June 9, 1931, and a reasonable attorney's fee.

The cause is remanded for the further purpose of adjudicating the issues raised by the cross-complaint of respondents Fiebig and the answers of the respondents McDougal and Peternell thereto.

BEALS, C. J., GERAGHTY, and TOLMAN, JJ., concur.

HOLCOMB, J. (dissenting)—In my opinion, the cases cited by the majority as sustaining its decision do not support it except as to general principles. The facts here are more cogent in behalf of respondents than in the *Pfeiffer* case cited. The finding quoted here specifically brings this case within the rule of that case, and within an exception mentioned in *Burtt v. Schoening,* 138 Wash. 187, 244 Pac. 381. The judgment should be affirmed, and I therefore dissent.